No. 22-1710

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

ALICIA LOWE, JENNIFER BARBALIAS, DEBRA CHALMERS, NICOLE GIROUX, NATALIE SALAVARIA, ADAM JONES, GARTH BERENYI,

Plaintiffs-Appellants

v.

JANET T. MILLS, in her official capacity as Governor of the State of Maine, JEANNE M. LAMBREW, in her official capacity as Commissioner of the Maine Department of Health and Human Services, NIRAV D. SHAH, in his official capacity as Director for the Maine Center of Disease Control and Prevention, MAINEHEALTH, GENESIS HEALTHCARE OF MAINE, LLC, GENESIS HEALTHCARE, LLC, NORTHERN LIGHT EASTERN MAIN MEDICAL CENTER, MAINEGENERAL HEALTH

Defendants-Appellees

On Appeal from the United States District Court, District of Maine

## BRIEF OF DEFENDANTS-APPELLEES
## MAINEHEALTH, GENESIS HEALTHCARE OF MAINE, LLC,
## GENESIS HEALTHCARE, LLC, and MAINEGENERAL HEALTH

James R. Erwin
Katharine I. Rand
Katherine L. Porter
Pierce Atwood LLP
Merrill's Wharf,
254 Commercial Street
Portland, Maine 04101
(207) 791-1100
*Counsel for Defendants-Appellees*

## DISCLOSURE STATEMENT OF APPELLEE MAINEHEALTH

Appellee MaineHealth, through counsel and in accordance with Rule 26.1 of the Federal Rules of Appellate Procedure, hereby discloses it is a Maine non-profit corporation. The parent corporation of MaineHealth is MaineHealth Services, which is a Maine non-profit corporation that has no parent.

## DISCLOSURE STATEMENT OF
## APPELLEE GENESIS HEALTHCARE OF MAINE, LLC

Appellee Genesis HealthCare of Maine, LLC, through counsel and in accordance with Rule 26.1 of the Federal Rules of Appellate Procedure, hereby discloses it is a Maine limited liability company and that its sole member is GHC Holdings LLC. GHC Holdings LLC is a Delaware limited liability company and its sole member is Genesis Holdings LLC. Genesis Holdings LLC is a Delaware limited liability company and its sole member is Genesis HealthCare LLC. Genesis HealthCare LLC is a Delaware limited liability company and its sole member is GEN Operations II, LLC. GEN Operations II, LLC is a limited liability company and its sole member is GEN Operations I, LLC. GEN Operations I, LLC is a limited liability company and its sole member is FC-GEN Operations Investment, LLC. FC-GEN Operations Investment, LLC is a limited liability company in which the following have ownership interests:

- Sundance Rehabilitation Holdco, Inc. is a Delaware corporation having a 5.2% membership interest

i

- Sun Healthcare Group, Inc. is a Delaware corporation having a 65.3% membership interest, and also a 100% interest in Sundance Rehabilitation Holdco, Inc.

- Multiple investors have a 29.5% interest holding rights to income and losses but no rights as to control.

Genesis Healthcare, Inc. is a publicly traded corporation organized in Delaware and the sole shareholder of Sun Healthcare Group, Inc. Genesis Healthcare, Inc., is traded on OTCMKTS under the ticker symbol "GENN". There is no shareholder owning 10% or more of Genesis Healthcare, Inc., shares.

### DISCLOSURE STATEMENT OF
### APPELLEE GENESIS HEALTHCARE LLC

Appellee Genesis HealthCare LLC, through counsel and in accordance with Rule 26.1 of the Federal Rules of Appellate Procedure, hereby discloses it is a Delaware limited liability company and that its sole member is GEN Operations II, LLC. GEN Operations II, LLC is a limited liability company the sole member of which is GEN Operations I, LLC. GEN Operations I, LLC is a limited liability company the sole member of which is FC-GEN Operations Investment, LLC. FC-GEN Operations Investment, LLC is a limited liability company in which the following have ownership interests:

- Sundance Rehabilitation Holdco, Inc. is a Delaware corporation having a 5.2% membership interest

- Sun Healthcare Group, Inc. is a Delaware corporation having a 65.3% membership interest, and also a 100% interest in Sundance Rehabilitation Holdco, Inc.

- Multiple investors have a 29.5% interest holding rights to income and losses but no rights as to control.

Genesis Healthcare, Inc. is a publicly traded corporation organized in Delaware and the sole shareholder of Sun Healthcare Group, Inc. Genesis Healthcare, Inc., is traded on OTCMKTS under the ticker symbol "GENN". There is no shareholder owning 10% or more of Genesis Healthcare, Inc., shares.

## DISCLOSURE STATEMENT OF
## APPELLEE MAINEGENERAL HEALTH

Appellee MaineGeneral Health, through counsel and in accordance with Rule 26.1 of the Federal Rules of Appellate Procedure, hereby discloses that it is a Maine non-profit corporation, and that it has no parent corporation.

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT OF APPELLEE MAINEHEALTH ......................... i

DISCLOSURE STATEMENT OF APPELLEE GENESIS HEALTHCARE OF MAINE, LLC ...................................................................................... i

DISCLOSURE STATEMENT OF APPELLEE GENESIS HEALTHCARE LLC ......................................................................................................... ii

DISCLOSURE STATEMENT OF APPELLEE MAINEGENERAL HEALTH .................................................................................................. iii

TABLE OF AUTHORITIES ...................................................................... vi

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................ 1

STATEMENT OF THE CASE ..................................................................... 1

STATEMENT OF FACTS .......................................................................... 3

SUMMARY OF THE ARGUMENT .............................................................. 7

ARGUMENT ......................................................................................... 10

    I.    STANDARD OF REVIEW ............................................................. 10

    II.    APPELLANTS HAVE NOT PLED AN ACTIONABLE TITLE VII CLAIM BECAUSE THEIR REQUESTED ACCOMMODATION WOULD CONSTITUTE AN UNDUE HARDSHIP ....................................................................... 11

        A.    The only accommodation alleged or at issue is a non-medical exemption that would allow Appellants to continue working in DHCFs without receiving the required COVID-19 vaccine. .................................................... 13

        B.    Title VII does not require employers to expose themselves to public health and legal risks in order to accommodate an employees' religious beliefs. ........................ 15

C.    There is no conflict between Title VII and the Vaccine Mandate given that Appellants' requested accommodation would result in undue hardship to Providers. ...................................................................19

D.    The District Court did not make any impermissible factual determinations in the Order. .........................................21

CONCLUSION ....................................................................22

CERTIFICATE OF COMPLIANCE WITH RULE 32 ...........................................24

CERTIFICATE OF SERVICE ................................................................25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................. 9, 10

*Baltgalvis v. Newport New Shipbuilding, Inc.*,
132 F. Supp. 2d 414 (E.D. Va. 2001),
*aff'd* 15 F. App'x. 172 (4th Cir. 2001) ......................................... 16

*Bell Atlantic v. Twombley*,
550 U.S. 544 (2007) .................................................................... 10

*Bhatia v. Chevron U.S.A., Inc.*,
734 F.2d 1382 (9th Cir. 1984) ..................................................... 15

*Cloutier v. Costco Wholesale Corp.*,
390 F.3d 126 (1st Cir. 2004) ................................................... 12, 21

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ....................................................... 11

*Dr. T. v. Alexander-Scott*,
No. 1:21-cv-00387-MSM-LDA, 2022 WL 79819 (D.R.I. Jan. 7, 2022) ...... 20

*EEOC v. Oak-Rite Mfg. Corp.*,
No. IP99–1962–C–H/G, 2001 WL 1168156 (S.D. Ind. Aug. 27, 2001) ....... 18

*Haley v. City of Boston*,
657 F.3d 39 (1st Cir. 2011) .......................................................... 10

*Jane Does 1-6 v. Mills*,
16 F.4th 20 (1st Cir. 2021) ................................................. *passim*

*Kalsi v. New York City Transit Auth.*,
62 F. Supp. 2d 745 (E.D.N.Y. 1998),
*aff'd* 189 F.3d 461 (2d Cir. 1999) ............................................... 15

vi

Page(s)

*Kluge v. Brownsburg Community School Corp.*,
  No. 1:19-cv-2462-JMS-DLP, 2021 WL 2915023
  (S.D. Ind. July 12, 2021) ................................................................17

*Matthews v. Wal-Mart Stores, Inc.*,
  417 F. App'x 552 (7th Cir. 2011)......................................... 17, 18

*McWright v. Alexander*,
  982 F.2d 222 (7th Cir. 1992) ................................................ 12, 21

*Robinson v. Children's Hospital of Boston*,
  No. 14-10263-DJC, 2016 WL 1337255 (D. Mass. Apr. 5, 2016)................16

*Rodriguez-Reyes v. Molina-Rodriguez*,
  711 F.3d 49 (1st Cir. 2013)................................................... 10, 11

*Ruiz Rivera v. Pfizer Pharms., LLC*,
  521 F.3d 76 (1st Cir. 2008)...........................................................11

*Santiago v. Puerto Rico*,
  655 F.3d 61 (1st Cir. 2011)...........................................................10

*Seaworth v. Pearson*,
  203 F.3d 1056 (8th Cir. 2000) ......................................................16

*Stormans Inc. v. Selecky*,
  844 F. Supp. 2d 1172 (W.D. Wash. 2012) ....................................20

*Sutton v. Providence St. Joseph Medical Center*,
  192 F.3d 826 (9th Cir. 1999) ........................................................17

*Trahan v. Wayfair Maine, LLC*,
  957 F.3d 54 (1st Cir. 2020).................................................... 14, 21

*Trans World Airlines, Inc. v. Hardison*,
  432 U.S. 63 (1977)........................................................................13

*United States v. Zannino*,
  895 F.2d 1 (1st Cir. 1990).............................................................19

vii

Page(s)

*Weber v. Leaseway Dedicated Logistics, Inc.*,
    166 F.3d 1223 (10th Cir. 1999) ......................................................................17

*Yeager v. FirstEnergy Generation Corp.*,
    777 F.3d 362 (6th Cir. 2015) ........................................................................17

*Zenon v. Guzman*,
    924 F.3d 611 (1st Cir. 2019) ................................................................. 11, 12

## STATUTES

22 M.R.S. § 802 ..................................................................................................4

22 M.R.S. § 802(4-B)(B) ....................................................................................4

22 M.R.S. § 803 ..................................................................................................6

22 M.R.S. § 804 ..................................................................................................6

22 M.R.S. § 1817 ................................................................................................6

42 U.S.C. § 1985 ................................................................................................3

42 U.S.C. § 2000e(j) .........................................................................................12

42 U.S.C. § 2000e-7 ..........................................................................................20

Title VII of the Civil Rights Act of 1964 ........................................... *passim*

## RULES

10-144 C.M.R. Ch. 264 ......................................................................................5

10-144 C.M.R. Ch. 264, §1(D) ..........................................................................4

10-144 C.M.R. Ch. 264, §2(A) .................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ......................................................................................8

Page(s)

**OTHER AUTHORITIES**

https://www.maine.gov/sos/cec/elec/results/index.html ............................................5

L.D. 798 .............................................................................................................4, 5

Mills Administration Provides More Time for Health Care Workers to Meet
COVID-19 Vaccination Mandate, *available at:*
https://www.maine.gov/governor/mills/news/mills-administration-
provides-more-time-health-care-workers-meet-covid-19-vaccination ...........5

P.L. 2019, Ch. 154, § 11 ...........................................................................................4

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether the District Court correctly granted Appellees' motion to dismiss and dismissed Appellants' claims alleging that Appellees violated Title VII when they required all employees to be vaccinated against the SARS CoV-2 coronavirus ("COVID-19"), subject only to medical exemptions, in compliance with the State's Vaccine Mandate applicable to Designated Healthcare Facilities?

## STATEMENT OF THE CASE

This case will likely strike the Court with déjà vu as these issues have been previously presented and decided by this Court. Although the procedural posture of the case is different – now before the Court on a granted motion to dismiss (ECF No. 156) instead of a denied preliminary injunction (ECF No. 65) – the same case law applies and supports the District Court's dismissal of Appellants' claims. In addition, the relevant facts remain unchanged since our last briefings to the Court.

Maine's healthcare worker vaccination law was updated to include COVID-19 well into the COVID-19 pandemic (after the religious and philosophical exemptions to vaccination were removed from the law); Appellants object to the COVID-19 vaccine on religious grounds; Appellants seek a non-medical exemption to the vaccination rule; and the Appellees (hereafter, "Providers") cannot provide Appellants their requested accommodation because of the severe consequences they would suffer. *See infra* at 2-5.

Despite losing the same arguments in their preliminary injunction appeal with this Court, Appellants continue to argue that the Providers violated Title VII (and in doing so violated the Supremacy Clause) by refusing to provide them their requested accommodation – a non-medical exemption to the COVID-19 vaccine.  The Court's prior holding in this case and related federal case law bars Appellants' claims and supports the District Court's dismissal order because Providers "need not provide the non-medical exemption the appellants request because doing so would cause them to suffer undue hardship." *Jane Does 1-6 v. Mills*, 16 F.4th 20, 36 (1st Cir. 2021).  Further, there is no Supremacy Clause violation because "[t]he parties agree that Title VII is the supreme law of land; the hospitals merely dispute that Title VII requires them to offer the appellants the religious exemptions they seek." *Id*. at 35-36.  Appellants also argue that in granting the Providers' motion to dismiss on the Title VII claim, the District Court made impermissible factual findings.  As explained below, Appellants' superficial argument regarding alleged factual findings does not bear out.  For all of these reasons, the Court should affirm the District Court's Order on Motions to Dismiss dismissing Appellants' claims (the "Order", ECF Doc. No. 156).[1]

---

[1] On appeal, Appellants have abandoned their standalone Supremacy Clause claim as it is not separately appealed.  (*See* Pls.' Brief at 44-45).  Rather, Appellants fold their Supremacy Clause arguments into their Title VII arguments.  Appellants also abandon any appeal of the District Court's dismissal of their conspiracy claim under

## STATEMENT OF FACTS

Accurate and comprehensive factual summaries of the legislative and regulatory actions relevant to Appellants' claims have been set forth in decisions by this Court and the District Court and are supported by the public record. *See Mills*, 16 F.4th at 24-28; (Order at 7-9). Notwithstanding, Appellants ignore these summaries and continue to present a factually inaccurate legislative and regulatory history that better suits their narrative of religious hostility on the part of the State Appellees and Providers. As this Court observed in its opinion denying Appellants' preliminary injunction motion, Maine did *not* eliminate only the religious exemption to the statute and regulation requiring healthcare workers to receive certain immunizations, and it did *not* eliminate the religious exemption in connection with the pandemic or the addition of the COVID-19 vaccine to the list of mandated immunizations. *See Mills*, 16 F.4th at 30. As the District Court (and this Court previously) found and as described below, the legislative and regulatory history does not bear out Appellants' claim that the challenged rule evinces animus toward religion. *Id*. at 30-37; (Order at 9.)

For years, the Maine Department of Health and Human Services ("DHHS") has had the statutory responsibility to "[e]stablish procedures for the control,

---

42 U.S.C. § 1985 given that it is not referenced anywhere in Appellants' Brief. (*See* Pl's Brief at 45-55.)

detection, prevention, and treatment of communicable . . . diseases, including [through] public immunization and contact notification programs." 22 M.R.S. § 802. Exercising its authority under Section 802, DHHS and Maine Center for Disease Control (the "Maine CDC") enacted rules in 2002, requiring all Designated Healthcare Facilities[2] ("DHCF") to obtain and maintain their employees' proof of immunization or documented immunity against a variety of communicable diseases, including but not limited to measles, mumps, chicken pox, and—more recently— influenza.  10-144 C.M.R. Ch. 264, §2(A) ("Vaccine Mandate").  Until 2019, Section 802 recognized religious and philosophical exemptions for employees whose sincere religious or philosophical beliefs were contrary to immunization. 22 M.R.S. § 802(4-B)(B).  The Vaccine Mandate similarly permitted DHCFs to recognize religious and philosophical exemptions.  In 2019, however, the Legislature passed L.D. 798, which removed these non-medical exemptions from Section 802, and further directed DHHS to amend its rules and to eliminate non-medical exemptions by September 1, 2021.  P.L. 2019, Ch. 154, § 11.  In March 2020, Maine voters soundly rejected a peoples' veto referendum, thereby endorsing

---

[2] The term Designated Healthcare Facility (hereafter "DHCF") is defined in the rules to include "a licensed nursing facility, residential care facility, Intermediate Care Facility for Individuals with Intellectual Disabilities . . ., multi-level healthcare facility, hospital, or home health agency subject to licensure by the State of Maine, Department of Health and Human Services Division of Licensing and Certification." 10-144 C.M.R. Ch. 264, §1(D).

the Legislature's decision to eliminate non-medical exemptions from vaccination for employees working in DHCFs.[3]

On April 14, 2021, consistent with the Legislature's directive and several months before COVID-19 was added to the list of required vaccines, DHHS amended the Vaccine Mandate by eliminating two non-medical exemptions from the vaccine requirement. On August 12, 2021, DHHS and Maine CDC issued an Emergency Routine Technical Rule ("ERTR"), further amending the Vaccine Mandate to add COVID-19 to the list of mandatory vaccines for employees of DHCFs, requiring employees to have received their final dose by September 17, 2021.[4] On September 2, 2021, the Governor announced that DHHS would not enforce the Vaccine Mandate's COVID-19 vaccine requirement until October 29, 2021.[5]

---

[3] Question 1 on the March 3, 2020 ballot asked whether voters wished to repeal L.D. 798 and reinstate religious and philosophical exemptions from the vaccine requirements. It was defeated 72% to 27%. Full results of the March 3, 2020, election are available on the website of the Maine Secretary of State: https://www.maine.gov/sos/cec/elec/results/index.html.

[4] A red-lined copy of the State of Maine Immunization Requirements for Healthcare Workers, 10-144 C.M.R. Ch. 264, can be found at ECF Doc. No. 50-1. The choice of the September 17 date appears intended to allow a two week period for vaccines to become fully effective before the original enforcement date of October 1.

[5] *See* Mills Administration Provides More Time for Health Care Workers to Meet COVID-19 Vaccination Mandate, *available at:* https://www.maine.gov/governor/mills/news/mills-administration-provides-more-time-health-care-workers-meet-covid-19-vaccination.

The consequences to a DHCF of failing to require and maintain proof of employee vaccination or medical exemption are substantial. DHCFs that do not comply with the Vaccine Mandate may be enjoined from continuing to permit employees to work absent proof of vaccination or medical exemption and are subject to civil fines, penalties, and loss of licensure. 22 M.R.S. §§ 803-804. Section 804 of the Vaccine Mandate specifically states:

> Any person who neglects, violates or refuses to obey the rules . . . may be ordered by the department, in writing, to cease and desist . . . . In the case of any person who refuses to obey a cease and desist order . . . the department may impose a fine, which may not be less than $250 or greater than $1,000 for each violation. Each day that the violation remains uncorrected may be counted as a separate offense . . . .

> A licensing agency under the department may immediately suspend a license[6] pursuant . . . for a violation under this section.

*Id*. § 804.

Only a fraction of Maine's healthcare facilities—broadly defined—constitute DHCFs; but each of the Providers operates one or more DHCFs, licensed and regulated by DHHS.[7] As noted above, the Providers are required as a condition of

---

[6] Pursuant to 22 M.R.S. § 1817, DHHS may "amend, modify, or refuse to renew a license in conformity with the Maine Administrative Procedure Act, or file a complaint with the District Court requesting suspension or revocation of any license on any of the following grounds: violation of this chapter or the rules pursuant to this chapter, permitting, aiding or abetting the commission of any illegal act in that institution, or conduct or practices detrimental to the welfare of a patient."

[7] All three Appellees on this Brief are licensed healthcare providers with facilities in Maine that qualify as DHCFs. MaineHealth and MaineGeneral Health operate

their licensure to assure that all non-exempt employees who are physically present in any of their DHCFs are fully vaccinated for COVID-19. To comply with the Vaccine Mandate, as amended by the ERTR on August 12, 2021, each of the Providers implemented an employment requirement that employees be fully vaccinated by the date established in the Vaccine Mandate or by the Governor, unless they present a valid medical exemption; and they communicated this requirement to their workforces. (First Am. Ver, Compl. For Inj. Relief, Declaratory Relief and Damages ("Am. Compl.") ¶¶ 72-74, 79, 83-86, ECF Doc. No. 152; ECF Doc. Nos. 152-2, 152-3, and 152-4, respectively.)

Appellants Alicia Lowe, Debra Chalmers Nicole Giroux and Garth Berenyi allege that they are healthcare workers employed at one of Providers' "healthcare facilities," that they requested a religious exemption from the vaccine requirement, and their Provider-employer denied their request as inconsistent with the Vaccine Mandate. (Am. Compl. at ¶¶ 10-11, 14-15, 72-74, 79, 83-86.)

## SUMMARY OF THE ARGUMENT

In order to comply with the State's Vaccine Mandate, the Providers had no choice but to require their on-site employees to receive COVID-19 vaccinations, subject to exemption only for medical reasons. Appellants claim that by complying

---

hospitals and other DHCF and non-DHCF facilities; Genesis operates long-term care facilities.

with state law, Providers violated Title VII because they did not attempt to accommodate Appellants' sincerely held religious objections to the various available COVID-19 vaccinations.  However, from this case's very inception and continuing to this day, Appellants have consistently stated – and expressly pled in their Verified Complaint and Amended Verified Complaint – that the *only* acceptable accommodation from any of the Providers is an outright non-medical exemption from the Vaccine Mandate.  This, despite the fact that an exemption is the one accommodation that Providers cannot lawfully offer to their DHCF employees. (Compl. at ¶¶ 5, 8, ECF Doc. No. 1; Am. Compl. at ¶¶ 5, 8; Pls.'-Appellants' Opening Brief ("Pls.' Brief") at 7-13)  As noted above, Providers risk severe penalties, including loss of their license to operate, if they provide Appellants their requested accommodation.  The Providers thus have asserted, as an affirmative defense, that accommodating Appellants with a non-medical exemption from receiving COVID-19 vaccinations would constitute an undue hardship under Title VII.

In pursuing their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) below, the Providers did not, and do not here on appeal, contest the sufficiency of Appellants' prima facie case.  Rather, the dispositive issue below was whether the allegations in the Amended Complaint required dismissal in light of Providers'

undue hardship affirmative defense.  The District Court below properly held that they did.

The reason for the District Court's decision is straightforward.  While Title VII requires employers to provide reasonable accommodations to employees on account of their sincerely held religious beliefs, that duty is limited to accommodations that do not create an undue hardship.  It is well settled that the undue hardship threshold is low, and that employers retain significant freedom to enforce qualification standards and rules when granting an exception would have more than a *de minimis* negative effect.  An accommodation that would put an employer in violation of state or federal law clears that low threshold and is *per se* an undue hardship.  This is especially true in this case where the consequence of violating the law includes possible loss of license and the ability for Providers to operate their healthcare facilities during a pandemic.  This Court adopted similar reasoning in a prior decision regarding these same facts and concluded Providers would suffer undue hardship.

The District Court evaluated Appellants' allegations using the *Ashcroft v. Iqbal* standard and appropriately credited Appellants' allegations (other than their factual misstatements about the Vaccine Mandate's legislative history). 556 U.S. 662, 678 (2009).  Applying those same allegations to Providers' undue hardship affirmative defense, which it was clearly authorized to do, the District Court

concluded Appellants could not plead a plausible Title VII claim.  Contrary to Appellants' arguments on appeal concerning the Order, the District Court did not make any improper factual findings, applied the appropriate legal standards and case law, and correctly dismissed Appellants' Title VII claim.  This Court should affirm.

## ARGUMENT

## I.    STANDARD OF REVIEW

This Court's review of the District Court's Order is *de novo*.  *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 52 (1st Cir. 2013).  To survive a motion to dismiss, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic v. Twombley*, 550 U.S. 544 (2007)).  A court will "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom" and "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011); *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

Although a court must accept the factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action" will not suffice.  *Iqbal*, 556 U.S. at 678. In addition, a court is not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or

unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

In its review of a motion to dismiss, a court must separate "conclusory legal allegations" from "allegations of fact" and assess whether the "winnowed residue of factual allegations give rise to a plausible claim to relief." *Rodriguez-Reyes*, 711 F.3d at 53. Dismissal is appropriate if the facts alleged do not "possess enough heft to show that [they are] entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations in original and original alterations omitted.).

Particularly pertinent here, Courts may also evaluate a defendant's affirmative defense in the context of a motion to dismiss where "the facts establishing the defense [are] clear on the face of the plaintiff's pleadings." *Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019) (internal citations omitted). "[W]hen the facts establishing the defense appear within the four corners of the complaint, and upon review there is 'no doubt' that the plaintiff's claim is barred by the raised defense, dismissal is appropriate." *Id*.

## II.    APPELLANTS HAVE NOT PLED AN ACTIONABLE TITLE VII CLAIM BECAUSE THEIR REQUESTED ACCOMMODATION WOULD CONSTITUTE AN UNDUE HARDSHIP

As the District Court observed, Providers do not challenge Appellants' ability to make their prima facie case under Title VII and their claim of religious discrimination therefore "turn[s] on the undue hardship affirmative defense." (Order

at 15.)  Title VII's prohibition against discrimination on the basis of religion covers "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's . . . religious observances or practices without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).  Once a plaintiff-employee establishes a prima facie case, for which they carry the burden of proof, the burden of proof shifts to the defendant-employer to establish its affirmative defense – namely, that it either provided a reasonable accommodation to the plaintiff or that it could not do so because providing an accommodation would constitute an undue hardship. *Cloutier v. Costco Wholesale Corp*., 390 F.3d 126, 133 (1st Cir. 2004).  To prove undue hardship, a defendant-employer typically would have to rely on facts outside the complaint, which is improper (with some exceptions) for courts to consider in the context of a motion to dismiss.  *See McWright v. Alexander*, 982 F.2d 222, 227 (7th Cir. 1992).  Here, however, because the uncontested allegations pled by Appellants in their Amended Complaint (and their initial Verified Complaint) conclusively establish undue hardship, the District Court was empowered to consider the affirmative defense in a motion to dismiss context.  *See Zenon*, 924 F.3d at 616.

Since at least 1977, federal courts have interpreted the term "undue hardship" to mean anything more than *de minimis*, consistent with the United States Supreme

Court's holding in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 68 (1977). Appellants allege that Providers have violated Title VII by failing to consider or grant their requests for non-medical exemptions from the Immunization Rule – i.e., to allow Appellants to continue doing their jobs using alternative protections against COVID-19 without receiving the COVID-19 vaccine.   (Am. Compl. ¶¶ 5, 8.) Appellants also acknowledge, however, that granting this accommodation would require Providers to defy the Vaccine Mandate and thereby jeopardize their licensure.   (*Id*. ¶¶ 44-49.)   In short, it is plain from the face of the Amended Complaint that granting the religious accommodations Appellants seek would have been an undue hardship on Providers' businesses.  For that reason, Appellants have failed to state a claim upon which Title VII relief can be granted.

### A. The only accommodation alleged or at issue is a non-medical exemption that would allow Appellants to continue working in DHCFs without receiving the required COVID-19 vaccine.

Appellants do not allege that they requested or were entitled to an accommodation that would remove them from the purview of the Vaccine Mandate, such as a leave of absence, remote work, or reassignment to a position outside of any DHCF.[8]  To the contrary, Appellants emphatically assert that: **"All [they] seek in**

---

[8] To the extent Appellants may attempt to argue that they are alleging the Providers violated Title VII by not providing an interactive process for them to seek accommodation, (Pls.' Brief at p. 48), they have waived the argument by not explicitly asserting it below and foreclosed it by expressly pleading their sole accommodation request – an exemption to the vaccine requirement.  Moreover,

13

**this lawsuit is to be able to continue to provide the healthcare they have provided to patients for their entire careers, and to do so under the same protective measures that have sufficed for them to be considered superheroes for the last 18 months"** without getting vaccinated.  (Am. Comp. ¶ 8) (emphasis in original.)  Appellants also specifically allege that:

> The Governor's COVID-19 Vaccine Mandate also says that '[t]he organizations to which this requirement applies must ensure that each employee is vaccinated, with this requirement being enforced as a condition of the facilities' licensure.'
>
> **Thus the Governor has threatened to revoke the licenses of all health care employers who fail to mandate that all employees receive the COVID-19 vaccine.**
>
> (*Id.* at ¶¶ 33-34.) (emphasis in original.)

Thus, Appellants affirmatively allege that Providers were required to violate state law in order to accommodate their religious beliefs and that doing so carries substantial penalties for Providers.  As explained below, the accommodation Appellants sought would constitute an undue hardship, as a matter of law.

---

liability for failure to engage in an interactive process only arises when "the parties could have discovered and implemented a reasonable accommodation through good faith efforts."  *Trahan v. Wayfair Maine, LLC*, 957 F.3d 54, 67 (1st Cir. 2020).  Employers are not required to engage in an interactive process where the process to find a reasonable accommodation for employees would be futile.  *See id*.  Here, Appellants foreclosed the interactive process dialogue and the potential to find a reasonable accommodation from the start by declaring what the one and only accommodation must be.

**B. Title VII does not require employers to expose themselves to public health and legal risks in order to accommodate an employees' religious beliefs.**

Affirming the District Court's denial of Appellants' motion for preliminary injunction, this Court held that Appellants were unlikely to succeed on the merits of their Title VII claims against Providers, reasoning that "[t]he hospitals need not provide the exemption the appellants request because doing so would cause them to suffer undue hardship." *Mills*, 16 F.4th at 36. This conclusion is supported by an extensive body of case law rejecting claims that employers must excuse employees from work rules designed to protect their and others' safety. *E.g. Bhatia v. Chevron U.S.A., Inc.,* 734 F.2d 1382, 1383 (9th Cir. 1984) (holding it would be an undue hardship for the employer to excuse the plaintiff from the requirement that he shave his facial hair to accommodate the use of a respirator that would protect him from exposure to toxic gases); *Kalsi v. New York City Transit Auth.,* 62 F. Supp. 2d 745, 747-48 (E.D.N.Y. 1998), *aff'd* 189 F.3d 461 (2d Cir. 1999) (holding it would be an undue hardship for the employer to excuse an employee from the requirement that he wear a hard hat as a subway car inspector in order to accommodate a turban). Thus, even absent the Vaccine Mandate, there is little question that the Providers could have implemented mandatory vaccination policies and declined to extend religious exemptions during a pandemic, without running afoul of Title VII. *E.g.*

15

*Robinson v. Children's Hospital of Boston*, No. 14-10263-DJC, 2016 WL 1337255, at *8-9 (D. Mass. Apr. 5, 2016).

Here, however, the Providers' ability to offer a non-medical exemption – likely constrained by health and safety considerations – is even more definitively prevented by law.  Courts considering whether employers are required to accommodate employees' religious beliefs in ways that would place them in violation of the law have analyzed the question two different ways.  Some have concluded such claims fail to state a *prima facie* case, reasoning that the conflict with the plaintiff's religious beliefs stems from a statute or rule, and not a requirement of the employer.  *E.g. Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000); *Baltgalvis v. Newport New Shipbuilding, Inc.*, 132 F. Supp. 2d 414, 418 (E.D. Va. 2001), *aff'd* 15 F. App'x. 172 (4th Cir. 2001).  Applying the rationale set forth in these cases, for Appellants to state a claim for failure to provide reasonable accommodation under Title VII, they must identify an employment policy or requirement that conflicts with their religious beliefs, which the employer has the ability or discretion to modify.  State law renders COVID-19 vaccination a qualification requirement for every employee working in a DHCF, however.  Just as Providers could not choose to employ unlicensed physicians to practice medicine, they lack the discretion to waive the qualification required by the Vaccine Mandate.

16

Others have concluded that an accommodation that places the employer in violation of the law is *per se* an undue hardship. *Weber v. Leaseway Dedicated Logistics, Inc.*, 166 F.3d 1223 (10th Cir. 1999); *Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 830-31 (9th Cir. 1999). At least one Circuit Court of Appeals has declined to endorse or reject either approach, simply concluding that Title VII does not require employers to disregard the law "in the name of reasonably accommodating an employee's religious practices." *Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 364 (6th Cir. 2015). "Although they have disagreed on the rationale, courts agree that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law." *Sutton*, 192 F.3d at 830.

Because there is no dispute that Providers would have had to violate the Vaccine Mandate – that is, state law – to provide Appellants the only accommodation they say is acceptable to them, Appellants are left with the contention that their Title VII claims would be viable *if* the Vaccine Mandate were ultimately found to be unconstitutional. However, the law does not support this contention, either. "Title VII does not require employers to provide accommodations that would place them 'on the razor's edge of liability.'" *Kluge v. Brownsburg Community School Corp.*, No. 1:19-cv-2462-JMS-DLP, 2021 WL 2915023, at *22 (S.D. Ind. July 12, 2021) (*quoting Matthews v. Wal-Mart Stores,*

17

*Inc.*, 417 F. App'x 552, 554 (7th Cir. 2011)).  This Court has already correctly determined that Appellants are unlikely to succeed on the merits of their constitutional claims.  *Mills*, 16 F.4th at 29-35.  Whether or not Appellants ultimately persuade a court that the Vaccine Mandate is unconstitutional is irrelevant, however, because it is undisputed that "the state of the law during [Plaintiffs' employment] created a risk" of substantial penalties and loss of licensure.  *Id.* (holding employer was not required to accommodate an employee whose behavior, allegedly motivated by religion, exposed the employer to the risk of claims by transgender students, and finding it immaterial whether such claims or lawsuits would "ultimately have been successful"); *see also EEOC v. Oak-Rite Mfg. Corp.*, No. IP99–1962–C–H/G, 2001 WL 1168156, at *14 (S.D. Ind. Aug. 27, 2001) (holding that "[t]he risk of being fined" by OSHA was "sufficient to establish undue hardship").

In sum, it is plain from the face of the Amended Complaint that Providers could not have extended Appellants the only accommodation they seek without running afoul of a presumptively valid state law, and assuming all of the risks attendant to violating the Vaccine Mandate, including, absurdly, the risk that the healthcare facilities most needed during the pandemic might be unable to offer the very healthcare Appellants claim to want so ardently to provide.  Appellants therefore fail to state plausible Title VII claims against Providers.

### C. There is no conflict between Title VII and the Vaccine Mandate given that Appellants' requested accommodation would result in undue hardship to Providers.

Although Appellants have abandoned their standalone Supremacy Clause claim,[9] they continue to baldly assert that Title VII preempts the Vaccine Mandate because it is contrary to Title VII's requirements. This statement is factually and legally inaccurate. As discussed above, it is entirely possible for Providers to comply with both federal law (Title VII) and state law (the Vaccine Mandate). Yet, because Appellants have requested only one accommodation – a non-medical exemption from the Vaccine Mandate – which under applicable law constitutes a *per se* undue hardship – Providers cannot accommodate Appellants and there is no conflict between the two laws. Also, by alleging that a total exemption from the Vaccine Mandate is the only acceptable accommodation for their sincerely held religious beliefs, Appellants have eliminated from their case all other possible accommodations which may have been available to them under Title VII.

In addition, employing circular reasoning, Appellants contend the following Title VII language supports preemption because the Vaccine Mandate "'purports to require' discrimination on the basis of religion" (Pls.' Brief at 49.):

---

[9] Appellants do not separately appeal the Supremacy Clause claim asserted in the Amended Complaint (*see* Pls.' Brief at 45-55), which was abandoned below as evidenced in Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF Doc. No. 117). *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990).

> Nothing in this title shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State . . . other than such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this title.

42 U.S.C. § 2000e-7. The Vaccine Mandate does not contain any reference to religion, however; it simply requires employers to ensure that employees entering DHCFs are vaccinated unless eligible for a medical exemption. While the Vaccine Mandate limits the accommodations a healthcare employer can lawfully offer to an employee working in a DHCF who declines the vaccine for religious reasons, it does not preclude reasonable accommodations and therefore does not require or permit healthcare employers to discriminate in violation of Title VII. *E.g. Dr. T. v. Alexander-Scott*, No. 1:21-cv-00387-MSM-LDA, 2022 WL 79819, at *9-10 (D.R.I. Jan. 7, 2022) (holding that Rhode Island regulation virtually identical to Maine's Vaccine Mandate did not preclude reasonable accommodation and that the Appellants were therefore unlikely to establish preemption); *Stormans Inc. v. Selecky*, 844 F. Supp. 2d 1172, 1201 (W.D. Wash. 2012) (holding that Board of Pharmacy rules did not "require or permit" discrimination on the basis of religion and therefore were not preempted by Title VII, even if they were unconstitutional under the Free Exercise clause of the United States Constitution).

**D. The District Court did not make any impermissible factual determinations in the Order.**

While the question of whether an employee's sincerely held religious beliefs can be accommodated without imposing an undue hardship on an employer may be "generally appropriate for resolution outside the pleadings," *McWright v. Alexander,* 982 F.2d 222, 227 (7th Cir. 1992), Appellants have eliminated the need to do so by pleading that Title VII specifically entitles them to an exemption from the Vaccine Mandate while continuing to work as before.  (Am. Compl, ¶¶ 8, 75-76.)  Their approach leaves no facts for determination.   As this Court noted in denying Appellants' appeal of the District Court's denial of their motion for preliminary injunction:

> The hospitals need not provide the exemption the appellants request because doing so would cause them to suffer under hardship.  *See Cloutier v. Costco Wholesale Corp*., 390 F.3d 126, 134 (1st Cir. 2004); *see also Trahan v. Wayfair Maine, LLC*, 957 F.3d 54, 67 (1st Cir. 2020) (holding that "liability for failure to engage in an interactive process depends on a finding that the parties could have discovered and implemented a reasonable accommodation through good faith efforts").

*Mills et al*, 16 F.4th at 36.  Appellants' assertion that Providers are "not prohibit[ed]" from providing accommodations for sincerely held religious beliefs (Pls.' Brief at 52-53) is of course accurate, but beside the point.  They have made it clear that they are not willing to consider any accommodations other than an outright (and

21

unlawful) non-medical exemption *that is clearly not available to them*.[10]  None of

the cases cited by Appellants are to the contrary.  Further, as observed by the District

Court:

> [T]he facts establishing the requirements of the vaccine mandate and
> the consequences for employers who fail to abide by it *are not in
> dispute* . . . Plaintiffs have not pointed to any disputed fact in relation
> to the requirements of the vaccine mandate that requires further
> development beyond the motion to dismiss stage.

(Order at 21) (emphasis added.)  Accordingly, Appellants' allegations regarding the

only acceptable accommodation for them, a non-medical exemption, has boxed them

in and precluded Title VII relief for failure to state a claim.

## CONCLUSION

The District Court properly concluded that "[a]ccepting the properly pled

facts set forth in the amended complaint as true, if the Hospital Defendants had

granted the sole accommodation sought by the Plaintiffs, it would result in an undue

hardship by subjecting the Hospital Defendants to the imposition of a fine and the

'immediat[e] suspension of a license.'" (Order at 22.)  Far from abusing its

discretion, misapplying the law or making unwarranted factual findings on a motion

to dismiss, the District Court's analysis was careful, thoughtful, and well-reasoned.

---

[10] The trial court correctly found that "the State and Hospital Appellees' positions-
that a religious exemption from the vaccine mandate is not available but that other
religious accommodations consistent with both Title VII and Maine's COVID-19
vaccine mandate may be available-are consistent."  (Order at 21-22.)

Appellants' allegations and reasonable inferences taken therefrom cannot state a

plausible Title VII religious discrimination claim.  This Court should affirm.

DATED:  February 23, 2023

/s/ James R. Erwin
James R. Erwin, Bar No. 33509
Katharine I. Rand, Bar No. 105066
Katherine L. Porter, Bar No. 006714
PIERCE ATWOOD LLP
254 Commercial Street
Portland, ME 04101
207-791-1100
jerwin@pierceatwood.com
krand@pierceatwood.com
kporter@pierceatwood.com

Attorneys for Appellees MaineHealth,
Genesis Healthcare of Maine, LLC, Genesis
Healthcare, LLC, MaineGeneral Health

## CERTIFICATE OF COMPLIANCE WITH RULE 32

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), as it contains 5,324 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman size 14 font.

Dated: February 23, 2023

*/s/ James R. Erwin*
James R. Erwin, Bar No. 33509
PIERCE ATWOOD LLP
254 Commercial Street
Portland, ME 04101
207-791-1100
jerwin@pierceatwood.com

Attorney for Appellees MaineHealth,
Genesis Healthcare of Maine, LLC, Genesis
Healthcare, LLC, MaineGeneral Health

## CERTIFICATE OF SERVICE

I certify that the within document has been electronically filed with the Clerk of the Court on February 23, 2023. All attorneys listed below are ECF filers and will receive service by electronic means pursuant to Rule 4 of this Court's Rules Governing Electronic Filing:

> Roger K. Gannam
> Horatio G. Mihet
> Daniel J. Schmid
> Stephen C. Whiting
> Thomas A. Knowlton
> Kimberly L. Patwardhan
> Valarie A. Wright
> Ryan P. Dumais

Dated: February 23, 2023

> */s/ James R. Erwin*
> James R. Erwin, Bar No. 33509
> PIERCE ATWOOD LLP
> 254 Commercial Street
> Portland, ME 04101
> 207-791-1100
> jerwin@pierceatwood.com
>
> Attorney for Appellees MaineHealth,
> Genesis Healthcare of Maine, LLC, Genesis
> Healthcare, LLC, MaineGeneral Health