Appeal No. 22-1710

# United States Court of Appeals for the First Circuit

ALICIA LOWE; JENNIFER BARBALIAS; GARTH BERENYI; DEBRA
CHALMERS; NICOLE GIROUX; ADAM JONES; NATALIE SALAVARRIA,

*Plaintiffs - Appellants,*

*v.*

JANET T. MILLS, in her official capacity as Governor of the State of Maine;
JEANNE M. LAMBREW, in her official capacity as Commissioner of the Maine
Department of Health and Human Services; DR. NIRAV D. SHAH, in his official
capacity as Director of the Maine Center for Disease Control and Prevention;
MAINEHEALTH; GENESIS HEALTHCARE OF MAINE, LLC; GENESIS
HEALTHCARE, LLC; MAINEGENERAL HEALTH; NORTHERN LIGHT
EASTERN MAINE MEDICAL CENTER,

*Defendants – Appellees*

On Appeal from the United States District Court for the District of Maine

**Defendant-Appellee Northern Light Eastern Maine Medical Center's Brief**

Ryan P. Dumais, Esq., *Counsel of Record*
rdumais@eatonpeabody.com
Eaton Peabody
77 Sewall Street, Suite 3000
P.O. Box 5249
Augusta, Maine 04332-5249
207-622-3747

## **RULE 26.1 DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Appellate Rules of Civil Procedure, Defendant/Appellee Northern Light Eastern Maine Medical Center makes the following disclosures regarding its corporate status:  Northern Light Eastern Maine Medical Center is a T13-B non-profit public benefit corporation.  Its sole member is Eastern Maine Healthcare Systems, doing business as Northern Light Health.  As a non-profit public benefit corporation, Northern Light Eastern Maine Medical Center has no shareholders.

## **TABLE OF CONTENTS**

RULE 26.1 DISCLOSURE STATEMENT.................................................................i

TABLE OF CONTENTS....................................................................... ii

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................1

SUMMARY OF THE ARGUMENT ........................................................1

STATEMENT OF THE CASE.................................................................3

I.      Factual Background .................................................................3

II.     The Statute and the Final Rule ................................................4

III.    Appellants' Objection to the COVID-19 Vaccine and Employment at
        Northern Light ........................................................................6

ARGUMENT ........................................................................................8

I.      Standard of Review.................................................................10

II.     The District Court Properly Dismissed Count IV of the First
        Amended Verified Complaint as There Has Been No Title VII
        Violation ................................................................................11

III.    Because Title VII Does Not Require Northern Light to Grant
        Appellants the Singular Accommodation Sought Here, Title VII
        Has No Preemptive Effect on the State's Vaccine Mandate ........18

IV.     In Contrast to Appellants' Contentions, the District Court Engaged
        in No Fact-Finding Below ......................................................22

CONCLUSION.....................................................................................23

CERTIFICATE OF COMPLIANCE......................................................24

CERTIFICATE OF SERVICE ..............................................................25

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ..............................................................10, 11

*Bell Atlantic v. Twombly,* 550 U.S. 544 (2007) .......................................................10

*California Federal Savings and Loan Association v. Guerra,*
    479 U.S. 272 (1987).............................................................................................19

*Charette v. St. John Valley Soil and Water Conservation Dist.,*
    332 F. Supp. 3d 316 (D. Me. 2018) ....................................................................17

*Cloutier v. Costco Wholesale Corp.,*
    390 F.3d 126 (1st Cir. 2004).....................................................13, 15, 16, 17, 20

*Does 1-6 v. Mills,* 2021 WL 4783626, 16 F.4th 20 .................................4, 15, 17, 19

*E.E.O.C. v. Oak-Rite Mfg. Corp.,* No. IP99-1962-C-H/G,
    2001 WL 1168156 (S.D. Ind. Aug. 27, 2001) ....................................................13

*E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y*
    *Alcantarillados de Puerto Rico,* 279 F.3d 49 (1st Cir. 2002) .......................12, 13

*Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132 (1963)...................19

*Foley v. Wells Fargo Bank, N.A.,* 772 F.3d 63 (1st Cir. 2014) ...............................11

*Haley v. City of Boston,* 657 F.3d 39 (1st Cir. 2011) ..............................................10

*In Re Compact Disc Minimum Advertised Price Antitrust Litig.,*
    456 F. Supp. 2d 131 (1st Cir. 1990) .............................................................8, 9, 17

*Kluge v. Brownsburg Cmty. Sch. Corp.,*
    No. 1:19-cv-2462, 2021 WL 2915023 (S.D. Ind. July 12, 2021)..............2, 3, 20

*McWright v. Alexander,* 982 F.2d 222 (7th Cir. 1992)............................................22

*Melendez v. Otero,* 964 F.2d 1225 (1st Cir. 1992) ...............................................9, 17

*Rodriguez-Reyes v. Molina-Rodriguez,* 711 F.3d 49 (1st Cir. 2013) .......................10

*Ruiz Rivera v. Pfizer Pharms., LLC,* 521 F.3d 76 (1st Cir. 2008)...........................10

*Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826 (9th Cir. 1999) ..............16

*Trahan v. Wayfair Maine, LLC,* 957 F.3d 54 (1st Cir. 2020)...................................17

*United States v. Zannino,* 890 F.2d 1 (1st Cir. 1990) ..........................................9, 17

*Zenon v. Guzman,* 924 F.3d 611 (1st Cir. 2019).......................................................11

## Rules

Federal Rules of Appellate Procedure 28(d)...............................................................1

## Statutes

10-144-264 Me. Code R. (eff. Apr. 14, 2021) ............................................................5

10-144-264 Me. Code R. (eff. Aug. 12, 2021) .......................................................5, 6

10-144-264 Me. Code R. (eff. Nov. 10, 2021) .......................................................5, 6

22 M.R.S.A. § 802(4-B)..........................................................................................4, 5

22 M.R.S.A. § 803 .................................................................................................7, 16

22 M.R.S.A. § 804 .................................................................................................7, 16

42 U.S.C. § 1985....................................................................................................8, 9

42 U.S.C. §§ 2000e-2000e17..........................................................................*passim*

U.S. Const. Art. VI, cl. 22........................................................................................8

## Other Authorities

P.L. 2019, ch. 154, §§ 2, 9-11 ...............................................................................4, 5

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether the District Court properly granted Appellee Northern Light's Motion to Dismiss Appellants'[1] claim that it violated Title VII by abiding by the State of Maine's Vaccine Mandate for employees of Designated Healthcare Facilities?

## SUMMARY OF THE ARGUMENT

As set forth in detail below, Appellants' allegations against Northern Light Eastern Maine Medical Center (hereinafter "Northern Light") are reducible to a simple contention. They assert that they asked for an exemption, and only an exemption, from a state law requiring that they each receive COVID-19 vaccinations in order to continue to be eligible to work at Northern Light's Designated Healthcare Facility (as defined below); that in compliance with state law Northern Light denied those requests explaining that it was not legally empowered to grant them; and finally that despite the legal prohibition on such exemptions, Northern Light was nonetheless obligated to grant them.

---

[1] Northern Light is conscious of the admonition contained in Rule 28(d) of the Federal Rules of Appellate Procedure that references to parties by litigation role, i.e., Plaintiff, Defendant, Appellant, Appellee, should be minimized. However, the multiplicity of Plaintiff/Appellant parties involved coupled with the fact that those Plaintiffs/Appellants were referenced pseudonymously for most of the pleadings below, leads to the conclusion that, in this unique circumstance, the use of the term "Appellants" is the clearest and most concise form of reference available.

The fatal flaw in Appellants' argument is their failure to recognize that Northern Light is bound by all applicable state laws, including the COVID-19 Vaccine Mandate, and accordingly is not empowered to grant their requests for exemption so long as those laws are in effect.

Contrary to Appellants' contentions, Title VII simply does not require employers to offer accommodations which violate the law. *See infra* at 11-21. It is blackletter law that requiring an employer to grant an accommodation which would violate the law creates an undue hardship *per se*. *See infra* at 11-17. Requiring Northern Light to violate the law would create this undue hardship on its own even if the substantial penalties outlined below were not in place. *See infra* at 11-17. Northern Light simply is not obliged to suffer such an undue hardship to accommodate Appellants under Title VII. In reaching this conclusion, the District Court engaged in no fact finding. It merely applied the factual allegations of Appellants' Complaint to the law. *See infra* at 21-22.

This analysis holds true ***independently*** of whether the State's Vaccine Mandate is finally found to be constitutional, as the District Court determined and as this Court held when upholding the District Court's denial of Appellants' preliminary injunction request; or unconstitutional, as Appellants contend.[2] *See*

---

[2] The point would also have held true regardless of whether the Rule (as defined below) or Final Rule were subsequently found to have been preempted by Title

*Kluge v. Brownsburg Cmty. Sch. Corp.*, No. 1:19-cv-2462-JMS-DLP, 2021 WL 2915023, at *22 (S.D. Ind. July 12, 2021) ("Title VII does not require employers to provide accommodations that would place them on the razor's edge of liability") (internal quotations and citations omitted).

In either case, the important facts remain unaltered.  Appellants allege that they asked Northern Light to grant them religious accommodations under Title VII in **one and only one** particular form; that of an exemption from the requirements of a state law undisputedly in effect at the time the requests were made.  (App. 290, 306, First Amended Verified Complaint ("FAVC") ¶¶ 8, 75.)  Northern Light had no power to decide that the Vaccine Mandate was unconstitutional or, for that matter, preempted even in the event that it agreed with Appellants' analysis of those points.

## STATEMENT OF THE CASE

### I.    Factual Background[3]

Appellants Barbalias, Salavarria, and Jones are healthcare workers who were employed by Northern Light.  (App. 292, 293, FAVC ¶¶ 12, 13, 16.)  In 2019 and

VII.  Again, the Rule was indisputably in effect at the time Appellants' exemption requests were made, denied, and when Appellants were discharged.

[3] Although laced with editorial remarks which seem designed to imply that the timing of the various decisions of the District Court and of this Court have been designed to injure Appellants, an implication Northern Light does not endorse, the substantive procedural history set forth in Appellants' brief and the citations to the orders and docket entries contained therein provide an adequate procedural background.

2021, a healthcare immunization statute (the "Statute") and related rule that applies to Appellants were amended to add a requirement for healthcare workers to become vaccinated against the novel coronavirus of 2019 ("COVID-19"). (App. 297, FAVC ¶ 39); *see* P.L. 2019, ch. 154, §§ 2, 9-11 (varying effective dates); 22 M.R.S.A. § 802(4-B).

## II.    The Statute and the Final Rule[4]

In response to declining vaccination rates in the State of Maine, the Maine Legislature amended the Statute in 2019, before the COVID-19 pandemic, to

---

[4] In the Complaint, Appellants assert that the Statute was amended "by Dr. Shah and the Maine Center for Disease Control and Prevention . . . to eliminate the ability of health care workers in Maine to request and obtain a religious exemption and accommodation from the COVID-19 Vaccine Mandate." (App. 297, FAVC ¶ 36.) As the District Court and this Court have observed in opinions denying Appellants' request for a preliminary injunction, that factual assertion is not accurate. *Does 1-6 v. Mills*, 2021 WL 4783626, at *4-5, *aff'd* 16 F.4th at 24-28. (Addendum to Opening Brief ("Add.") at 008-009). Accordingly, this section summarizing the background of the Statute, the Rule and the Final Rule is based both on the allegations of the First Amended Verified Complaint and the text of the Statute, the Rule, and Final Rule. Citation to these sources was proper in support of Northern Light's motion to dismiss below, was appropriate by the District Court, and remains appropriate here as their authenticity cannot be disputed and they are central to Appellants' claims. (*See* Add. at 003.) Further, Appellants specifically reference the Statute and related rules in the Complaint albeit they misstate certain facts about the Statute and rules. (App. 286, 292, 293, 296-297, FAVC ¶¶ 1, 12, 13, 16, 31-38.) Even if the Court disregards the text of the Statute, the Rule and the Final Rule, the District Court was correct, solely based on Appellants' allegations, to conclude that the claims against Northern Light and the other Hospital Defendants could not survive the motion to dismiss because Appellants admit in the Complaint that the Statute and the Rule (now the Final Rule) impose a vaccination requirement on Northern Light and its staff, which, as discussed below, Northern Light has no power to abrogate. (App. 296-297, FAVC ¶¶ 31-34.)

4

remove previously recognized religious and philosophical exemptions. *See* P.L. 2019, ch. 154, §§ 2, 9-11 (varying effective dates); 22 M.R.S.A. § 802(4-B). As a result, the only remaining exemption to immunization for healthcare workers is a medical exemption for individuals for whom immunization would be medically inadvisable. *See* 22 M.R.S.A. § 802(4-B); App. 297, FAVC ¶¶ 36-38.

In March 2020, Maine voters rejected a peoples' veto referendum on the statutory change, thereby endorsing the Maine Legislature's decision to eliminate non-medical exemptions from immunization for healthcare workers at Designated Healthcare Facilities.[5] (Add. at 008.) On April 14, 2021, following the referendum and consistent with the directive from the Maine Legislature, the Maine Department of Health and Human Services ("DHHS") formally amended its existing Immunization Requirements for Healthcare Workers rule to remove religious and philosophical exemptions from its text. *See* 10-144-264 ME. CODE R. (eff. Apr. 14, 2021) (App. 196-202). On August 12, 2021, DHHS issued an emergency rule further amending the Immunization Requirements for Healthcare Workers rule to add the COVID-19 vaccine to the list of mandated vaccines for healthcare workers (the "Rule"). 10-144-264 ME. CODE R. (eff. Aug. 12, 2021)

---

[5] The term "Designated Healthcare Facility" is defined in the rules to include "a licensed nursing facility, residential care facility, Intermediate Care Facility for Individuals with Intellectual Disabilities . . ., multi-level healthcare facility, hospital, or home health agency subject to licensure by the State of Maine, Department of Health and Human Services Division of Licensing and Certification." 10-144-264 ME. CODE R. §1(D) (eff. Nov. 10, 2021) (App. 251.)

(App. 209-216.)  The Rule required employees of Designated Healthcare Facilities to receive their final dose of the COVID-19 vaccine on or before September 17, 2021.  *Id*. at §§ 1(E)-(F), 2, 5, 5(A)(7), 7.  (App. 210-211, 213.)  On or about September 2, 2021, Governor Janet Mills announced that DHHS would not begin enforcing the Rule until October 29, 2021 so healthcare workers would have additional time to come into compliance.  *See* Order, ECF No. 44 (Sept. 5, 2021); Pls.' Resp. in Opp'n to Defs.' Mot. for Extension of Time to Resp. to Prelim. Inj., ECF No. 40 (Sept. 3, 2021).

On November 10, 2021, DHHS issued a final revised Immunization Requirements for Healthcare Workers rule (the "Final Rule"), which superseded the Rule.  10-144-264 ME. CODE R. (eff. Nov. 10, 2021) (App. 250-257.)  With respect to Appellants, the Final Rule is materially the same as the Rule and has the same impact on Appellants as it requires Northern Light employees to become vaccinated against COVID-19 and does not permit religious exemptions from the vaccination requirement.  *Compare id. with* 10-144-264 ME. CODE R. (eff. Aug. 12, 2021) (App. 209-216, 250-257.)

## III.  Appellants' Objection to the COVID-19 Vaccine and Employment at Northern Light

Northern Light operates one or more Designated Healthcare Facilities, licensed and regulated by DHHS.  (App. 251, 289, 295, 296, 297, FAVC ¶¶ 5, 22, 32.)  As a condition of its licensure, Northern Light is required to ensure that

6

employees who are physically present in the workplace are fully vaccinated for COVID-19 subject to the medical exemption. (App. 250-257, 292-294, 296-297, FAVC ¶¶ 12, 13, 16, 18, 19, 32-35.) If Northern Light does not follow the Final Rule, it would not be in compliance with state law and subject to severe consequences, including being enjoined from continuing to permit employees to work absent proof of vaccination or exemption, civil fines, penalties and loss of licensure. 22 M.R.S.A. §§ 803-04; App. 250-257, 297, FAVC ¶¶ 33, 34, 35. Accordingly, Northern Light was obliged to comply with the mandatory COVID-19 vaccination requirement consistent with the Final Rule and the State's deadline for vaccination. (App. 250-257, 307, 310, FAVC ¶¶ 80-82, 91.)

Appellants all claim to have sincerely held religious beliefs that prevent them from receiving the COVID-19 vaccine. (App. 298-304, FAVC ¶¶ 40-64.) According to the First Amended Verified Complaint, Barbalias, Salavarria, and Jones submitted written requests for an exemption and accommodation from the Statute and the Rule based on their religious beliefs but were denied exemptions to the Law. (App. 292, 293, 307-308, 311, 312, FAVC ¶¶ 12-13, 16, 80-81, 97-98, 101.)

In a letter to Barbalias, Northern Light, through its Human Resources Department informed her of the applicable COVID-19 vaccine requirement and explained that because the Statute and the Rule did not provide for non-medical

exemptions, it could not grant her non-medical exemption request. (App. 307-308, 034, FAVC ¶¶ 80-81 & Ex. C.) Northern Light advised Barbalias that she was free to submit a request for a medical exemption. (App. 307-308, 034, FAVC ¶¶ 80-81 & Ex. C.) Appellants Barbalias, Salavarria, and Jones make no allegations that they made any further requests of Northern Light. (App. 285-337, FAVC.) All were subsequently terminated from Northern Light for failure to comply with the Vaccine Mandate. (App. 311, 312, FAVC ¶¶ 97, 98, 101.)

## ARGUMENT

Appellants' First Amended Verified Complaint alleged three independent causes of action against Northern Light and the other Hospital Defendants in Counts II, IV and V under the Supremacy Clause (U.S. Const. Art. VI, cl. 22), Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*) and 42 U.S.C. § 1985, respectively. Each Count was appropriately dismissed by the District Court. (Add. at 022, 034, 036; App. 316, 321, 323.)

On appeal, Appellants have abandoned any independent pursuit of the Supremacy Clause claim (Count II) as an independent cause of action. *See* Appellants' Opening Brief at 44-45. In fact, Appellants abandoned this count below through their failure to argue it in Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF Doc. No. 117); *In Re Compact Disc Minimum Advertised Price Antitrust Litig.,* 456 F. Supp. 2d 131, 152-153 (1st Cir. 1990) ("A party's

8

failure to oppose specific arguments in a motion to dismiss results in waiver of those issues"); s*ee also United States v. Zannino*, 890 F.2d 1, 17 (1st Cir. 1990).[6]

Appellants have now also abandoned any appeal of the District Court's dismissal of their conspiracy claim under 42 U.S.C. § 1985 (Count V) as their brief contains no argument that the Superior Court erred in dismissing that claim. *See Appellants' Opening Brief at 45-55; Melendez v. Otero*, 964 F.2d 1225, 1226, n.1 (1st Cir. 1992) (holding that arguments not supported by "developed argumentation" on appeal are deemed waived).

Accordingly, as it pertains to Northern Light, the single question before this Court on appeal is whether the District Court properly granted Appellee Northern Light's Motion to Dismiss Appellants' claim that Northern Light violated Title VII by obeying the State of Maine's Vaccine Mandate for employees of Designated Healthcare Facilities and, in keeping therewith, refused to grant Appellants the only accommodation they wanted - a non-medical vaccination exemption.

As the District Court determined, Appellants' complaint failed to state a Title VII claim upon which relief could be granted and was appropriately

---

[6] Northern Light appreciates that Appellants continue to argue that Title VII has the effect of preempting the State of Maine's Vaccine Mandate as an aspect of their Title VII claim. As explained below, it has no such preemptive effect. Even if it did, the District Court would have been correct to conclude that no claim against Northern Light for violating Title VII would lie on Appellants' allegations.

dismissed because neither the Statute, the Final Rule, nor Northern Light's conduct in abiding by them, are at odds with Title VII's requirements.

## I.     Standard of Review

This Court reviews the District Court's dismissal of Appellants' claims *de novo*. *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 52 (1st Cir. 2013). To survive a motion to dismiss, the Complaint must "contain sufficient factual matter accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 678 (confirming a court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). Accordingly, dismissal is appropriate if the facts set forth in the Complaint do not "possess enough heft to show that [Plaintiffs] are entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions . . . ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as

true, we are not bound to accept as true a legal conclusion couched as a factual allegation"). *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted)).

Moreover, claims may be dismissed on a motion to dismiss based on an affirmative defense if "the facts establishing the defense [are] clear on the face of the plaintiff's pleadings." *Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019) (internal citations omitted). "[W]hen the facts establishing the defense appear within the four corners of the complaint, and upon review there is 'no doubt' that the plaintiff's claim is barred by the raised defense, dismissal is appropriate." *Id*.

In addition to reviewing the facts asserted in the Complaint and documents attached to it, courts may also consider additional documents where the authenticity is not disputed, the "documents [are] central to" Plaintiffs' claims or the "documents [are] sufficiently referred to in the complaint." *Foley v. Wells Fargo Bank, N*.A., 772 F.3d 63, 72-74 (1st Cir. 2014) (internal citations and quotation omitted).

## II.     The District Court Properly Dismissed Count IV of the First Amended Verified Complaint as There Has Been no Title VII Violation

As the District Court held, Appellants' requested exemption from mandatory COVID-19 vaccination required by the Statute and the Final Rule would impose an undue burden on Northern Light and therefore Appellants cannot state a claim for relief under Title VII.  (Add. at 022.)

Title VII expressly states that "[i]t shall be an unlawful employment practice for employers – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . .; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2. Title VII further provides that the duty to accommodate an employee's religious beliefs, practices and observances is built into the definition of "religion," which "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice *without undue hardship on the conduct of the employer's business*." *Id*. at § 2000e-2(j) (emphasis added).

To demonstrate an entitlement to relief under Title VII for religious discrimination and failure to accommodate, Appellants must show "(1) a bona fide religious practice conflicts with an employment requirement, (2) he or she brought the practice to the [employer's] attention, and (3) the religious practice was the basis for the adverse employment decision." *E.E.O.C. v. Union Independiente de*

*la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 55 (1st Cir. 2002) (internal citations and quotations omitted).

If Appellants are able to demonstrate their *prima facie* case, "the burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship." *See Cloutier v. Costco Wholesale Corp*., 390 F.3d 126, 133 (1st Cir. 2004).

Importantly, in the context of Title VII religious discrimination cases, "undue hardship" means more than a de minimis cost on the employer. *Id.* at 134-35. This Court has expressly held that the undue hardship "calculus applies both to economic costs, such as lost business or having to hire additional employees to accommodate a Sabbath observer, and to non-economic costs, such as compromising the integrity of a seniority system." *Id.*; *see also E.E.O.C. v. Oak-Rite Mfg. Corp*., No. IP99-1962-C-H/G, 2001 WL 1168156, at *10 (S.D. Ind. Aug. 27, 2001) ("questions of undue hardship have been resolved as a matter of law, especially where the employer showed that the proposed accommodation would either cause or increase safety risks or the risk of legal liability for the employer").

Even assuming that all Appellants can satisfy the *prima facie* case, a request for an exemption to the COVID-19 Vaccine Mandate required by the Statute and

the Final Rule would impose an undue burden on Northern Light and therefore there has **not** been a Title VII violation as a matter of law.

The District Court correctly saw that the **only** accommodation Appellants sought, was an exemption from the COVID-19 vaccine requirement imposed by the Statute and the Final Rule. (Add. at 014-022; App. 290.) Given the allegations of Plaintiffs' First Amended Verified Complaint, this conclusion is inescapable.

> **All Plaintiffs seek in this lawsuit is to be able to continue to provide the healthcare they have provided to patients for their entire careers, and to do so under the same protective measures that have sufficed for them to be considered superheroes for over two years.**

App. 290, FAVC ¶ 8 (emphasis in original); *see* Opp'n at 25 (ECF Doc. No. 117, p. 25).

> The Governor's COVID-19 Vaccine Mandate also says that '[t]he organizations to which this requirement applies must ensure that each employee is vaccinated, with this requirement being enforced as a condition of the facilities' licensure.'
>
> **Thus the Governor has threatened to revoke the licenses of all health care employers who fail to mandate that all employees receive the COVID-19 vaccine.**

App. 297, FAVC ¶¶ 33, 34 (emphasis in original).

Given these allegations, it is plain that Appellants contend that Northern Light was required to violate the law in order to provide their requested accommodation and that it would face devastating consequences for doing so. Accordingly, the requested accommodation plainly imposes an undue hardship on

Northern Light. *See Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 133-35 (1st Cir. 2004). Based on the facts alleged by Appellants, the District Court correctly found that granting Appellants' desired accommodation would amount to an undue hardship.[7]

The District Court's conclusion should be unsurprising. Considering identical allegations of Appellants' first Complaint, this Court has already commented that "hospitals [including Northern Light] need not provide the exemption the appellants request *because doing so would cause them to suffer undue hardship*." *Mills*, 16 F.4th 20 at 36 (emphasis added).

In concluding there would be an undue hardship, this Court cited to its *Cloutier* decision, in which it affirmed a district court's grant of summary judgment to the employer (Costco) on the grounds that plaintiff-employee's insistence on an exemption from the employer's prohibition of facial jewelry would result in undue hardship on the employer. *Id.; Cloutier,* 390 F.3d at 136. The plaintiff in *Cloutier* was a member of the Church of Body Modification and wore facial jewelry, including an eyebrow ring, as part of her religion. *Id.* at 129-30. This Court concluded that Costco was not required to grant plaintiff's request for an exemption to the dress code as "[g]ranting such an exemption would be an

---

[7] The allegations of the First Amended Verified Complaint make clear that the Statute and the Final Rule make the vaccination mandate applicable to Northern Light. *See* App. 296-297.

15

undue hardship because it would adversely affect the employer's public image"
and undermine its dress code designed to appeal to customer preference and
promote a professional public image.  *Id*. at 135-36.

The potential burden on Northern Light in this case is much more significant
than the burden on the employer in *Cloutier*.  To mitigate the spread of COVID-19
in the State of Maine, especially in Designated Healthcare Facilities where many
patients are essentially captive and likely more vulnerable to serious complications
associated with COVID-19, including death, the government issued the Rule.
Under the Rule (now the Final Rule), healthcare workers, including Appellants,
were required to become fully vaccinated against COVID-19 on or before October
29, 2021.  *See supra* at 4-6.  Designated Healthcare Facilities that do not comply
with the Final Rule, which expressly prohibits religious exemptions for workers,
could face substantial monetary and other enforcement penalties, including loss of
their license to operate, from the Maine Division of Licensing and Certification.
*See* 22 M.R.S.A. §§ 803-804; App. 297, FAVC ¶ 34.

Given these circumstances, there is no doubt that Appellants' argument
would require Northern Light to disregard the Statute and the Final Rule by
granting Appellants the single accommodation they seek; religious exemption from
the Vaccine requirement.  *See Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d
826, 830 (9th Cir. 1999) ("[C]ourts agree that an employer is not liable under Title

16

VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law.") Were Title VII to be read as Appellants propose, Northern Light would suffer an undue hardship far exceeding the burden placed on the employer of the unsuccessful plaintiff in *Cloutier*, who arrived at work adorned with facial piercings in violation of Costco's dress policy. There is truly no comparison. Thus, Appellants' Title VII claims were properly dismissed.[8]

---

[8] Moreover, to the extent that Appellants assert a Title VII interactive process theory, such claim must also be dismissed because their requested exemption from the vaccination rule imposes an undue burden on Northern Light. *See Mills*, 16 F.4th 20 at 35-36; *Trahan v. Wayfair Maine, LLC*, 957 F.3d 54, 67 (1st Cir. 2020) ("liability for failure to engage in an interactive process depends on a finding that the parties could have discovered and implemented reasonable accommodation through good faith efforts"); *Charette v. St. John Valley Soil and Water Conservation Dist.*, 332 F. Supp. 3d 316, 361-62 (D. Me. 2018) (granting summary judgment on plaintiff's interactive process claim because defendant engaged in a dialogue with plaintiff about her requested accommodations, which would have created an undue hardship on defendant). It is plain that here no such reasonable accommodation could have been found. The First Amended Verified Complaint makes clear that ***the only*** accommodation Appellants would accept was exemption from the law; an accommodation that simply was not, and is not, in Northern Light's power to grant. (App. 290, 298-304, FAVC ¶¶ 8, 40-64.) In any event, Northern Light engaged in a good faith interactive process with Appellants to evaluate their requested accommodations as required by Title VII because it reviewed their exemption requests, explained that by operation of state law it was required to deny them pursuant to the Rule, offered a medical exemption, if applicable, and offered to answer any questions employees had. *See* Verified Compl., Ex. C (App. 034.) Moreover, any such argument has been waived as it was never raised below. *In Re Compact Disc Minimum Advertised Price Antitrust Litig.,* 456 F. Supp. 2d 131, 152-153 (1st Cir. 1990); *United States v. Zannino*, 890 F.2d 1, 17 (1st Cir. 1990); *Melendez v. Otero*, 964 F.2d 1225, 1226, n.1 (1st Cir. 1992).

**III.    Because Title VII Does Not Require Northern Light to Grant Appellants the Singular Accommodation Sought Here, Title VII Has No Preemptive Effect on the State's Vaccine Mandate**

Appellants' efforts to escape the conclusion above by claiming that the Final Rule and the Statute are preempted by Title VII is unavailing.  Having explained in section II above that there is no conflict between the provisions of Title VII and the Rule or Final Rule, this assertion can be quickly dispensed with.

Title VII addresses preemption issues in only two areas.  First, section 708 of Title VII states "[n]othing in this title shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this title."  42 U.S.C. § 2000e–7.  Second, Section 1104 of Title XI (applicable to all titles of the Civil Rights Act, including Title VII), states "[n]othing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof."  *Id.* § 2000h-4.

As explained further above, the Statute and the Final Rule – specifically, the absence of a religious exemption in such laws – does not require or permit Northern Light to engage in an unlawful employment practice in violation of Title VII. By its terms, Title VII constrains the conduct of employers. It does not purport to govern the State's ability to set forth the regulations by which healthcare providers must abide. Moreover, contrary to Appellants' implicit assertion, Title VII never requires an employer to make a religious accommodation (or any other accommodation for that matter), when doing so would constitute an undue hardship as is the case here. *See supra* at 11-13.

In *California Federal Savings and Loan Association v. Guerra*, the Supreme Court analyzed Sections 708 and 1104 and concluded "there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of Title VII; these two sections provide a 'reliable indicium of congressional intent with respect to state authority' to regulate employment practice." 479 U.S. 272, 282 (1987) (internal citations omitted). Because Congress did not intend for Title VII to occupy the field, the preemption inquiry centers on whether there is conflict between the Statute, the Final Rule and Title VII such that "compliance with both federal and state regulations is a physical impossibility." *Id.* at 281 (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963)); *Mills*, 16 F.4th 20 at 35 (quoting same and noting the "narrow scope" of

19

preemption under Title VII).  Here, application of the Statute, the Final Rule and Title VII to Appellants yields the same result.

Simply put, compliance with both Title VII and the Statute and the Final Rule is not a "physical impossibility."  Therefore there is no preemption.[9]  As set forth in detail above, Title VII does not promise a Plaintiff receipt of ***any and all*** religious accommodations he or she may demand.  It expressly excuses employers from proving requested accommodations if doing so would amount to an undue hardship.  *Cloutier v. Costco Wholesale Corp*., 390 F.3d 126, 133 (1st Cir. 2004).

The only accommodation Appellants have demanded here - exemption from the Vaccine Mandate - would constitute an undue hardship for the reasons discussed above.  *See supra* at 11-17.  Moreover, Appellants' allegations make clear that exemption from the mandate is the only accommodation they will accept (App. 290, FAVC ¶ 8.)  Accordingly, through their allegations, Appellants have demonstrated that the only thing they seek from Northern Light amounts to an undue hardship under Title VII.

---

[9]  Even if this Court changes course and determines that Title VII preempts the Statute and the Final Rule, Northern Light was not empowered to conclude for itself at the time employees made exemption requests, or at the time Appellants were subsequently discharged, that the indisputably applicable Statute and Final Rule were preempted and that it could simply ignore the law.  *See Kluge v. Brownsburg Cmty. Sch. Corp*., No. 1:19-cv-2462-JMS-DLP, 2021 WL 2915023, at *22 (S.D. Ind. July 12, 2021) ("Title VII does not require employers to provide accommodations that would place them on the razor's edge of liability") (internal quotations and citations omitted).

Appellants' argument that State Defendants' and Provider Defendants' positions are at odds and that Provider Defendants could provide Appellants accommodations because "'the Department published guidance explaining that the Rule does not prohibit employers from providing accommodations under Title VII" illustrates their confusion on this point.  (Appellants' Opening Brief at 52) (quoting State Defs.' Mot. to Dismiss at 18-19, ECF No. 109 (Feb. 14, 2022)).

In the quoted language, State Defendants simply acknowledge that there *could be **an*** accommodation provided to healthcare workers other than an exemption to the Rule. Yet, here, it is abundantly clear that the *only* accommodation Appellants seek is an exemption from the Rule, which Provider Defendants cannot provide as it would require them to violate applicable law and potentially incur substantial penalties.  *See* Mot. at 10-11; State Defs.' Mot. to Dismiss (ECF Doc. No. 109) at 18 n.12, 18-19.  Thus, there is no inconsistency in State Defendants' and Provider Defendants' positions regarding possible accommodations permitted under the Rule.  Neither does the State Defendants' recognition that some accommodation other than exemption might be available (to a theoretical worker for whom one can be identified) support the preemption argument.  Rather, it makes clear that it is possible to comply with both Title VII and the Vaccine Mandate.  There is no conflict preemption.

**IV.  In Contrast to Appellants' Contentions, the District Court Engaged in No Fact-Finding Below**

It is often true that whether an employee's request for accommodation can be granted without imposing an undue hardship on the employer is a fact intensive question requiring resolution outside the pleadings.  *See McWright v. Alexander,* 982 F.2d 222, 227 (7th Cir. 1992).

That is simply not the case here.  Appellants have alleged that the singular accommodation they sought here was that they be given an exemption from the Vaccine Mandate while being permitted to go on doing their jobs exactly as they had previously done.  (App. 290, 298-304, 306, 307-308, FAVC ¶¶ 8, 40-64, 75-76, 80-82.)  They have also alleged that the state's Vaccine Mandate required Northern Light and the other Hospital Defendants not to employ workers who remained unvaccinated against COVID-19 as of October 1, 2021.  (App. 297, FAVC ¶¶ 33, 34.)  Finally, Appellants' allegations demonstrate that substantial penalties, including loss of their state-issued licenses would befall the Hospital Defendants if they violated the Vaccine Mandate.  (App. 297, FAVC ¶¶ 33, 34.)

In the face of these allegations, the District Court drew the only possible conclusion; that requiring Northern Light and the other Hospital Defendants to provide Appellants with their demanded exemption would constitute an undue hardship as a matter of law.

22

## CONCLUSION

For the reasons set forth above and articulated in the District Court's August 18, 2022 Order, Northern Light respectfully requests that the Court affirm the District Court's Order in its entirety and deny the Appellants' appeal.

Dated at Augusta, Maine, this 23rd day of February, 2023.

<div style="margin-left:40%">

Respectfully submitted,

DEFENDANT-APPELLEE,
Northern Light Eastern Maine
Medical Center


BY    */s/ Ryan P. Dumais*
       Ryan P. Dumais, Esq.
       rdumais@eatonpeabody.com
       EATON PEABODY
       77 Sewall Street #3000
       Augusta, ME 04330
       Phone: (207) 622-3747

</div>

23

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the page length limitation of Fed. R. App. P. 32(a)(7)(A) because this brief contains 25 pages, and Fed. R. App. P. 32(a)(7)(B) as it contains 6,610 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Standard 2016 in Times New Roman 14-point font.

*/s/ Ryan P. Dumais*
Ryan P. Dumais, Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2023, I electronically filed the foregoing Defendant/Appellee's Brief with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

James R. Erwin, Esq.
Roger K. Gannam, Esq.
Shannon A. Jankowski, Esq.
Thomas A. Knowlton, Esq.
Horatio G. Mihet, Esq.
Kimberly L. Patwardhan, Esq.
Katharine Ives Rand, Esq.
Daniel J. Schmid, Esq.
Sigmund D. Schutz, Esq.
Mathew D. Staver, Esq.
KatieLynn B. Townsend, Esq.
Stephen C. Whiting, Esq.

*/s/ Ryan P. Dumais*
Ryan P. Dumais, Esq.