No. 22-1710

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

ALICIA LOWE, JENNIFER BARBALIAS, DEBRA CHALMERS, NICOLE GIROUX, NATALIE SALAVARRIA, ADAM JONES, and GARTH BERENYI,

Plaintiffs-Appellants

v.

JANET T. MILLS, Governor of the State of Maine, JEANNE M. LAMBREW, Commissioner of the Maine Department of Health and Human Services, NIRAV D. SHAH, Director of the Maine Center for Disease Control and Prevention, MAINEHEALTH, GENESIS HEALTHCARE OF MAINE, LLC, GENESIS HEALTHCARE, LLC, NORTHERN LIGHT FOUNDATION, and MAINEGENERAL HEALTH

Defendants-Appellees

On Appeal from The United States District Court for the District of Maine

### STATE DEFENDANTS'-APPELLEES' PRINCIPAL BRIEF

AARON M. FREY
Attorney General

KIMBERLY L. PATWARDHAN
Assistant Attorney General

THOMAS A KNOWLTON
Deputy Attorney General
Chief, Litigation Division

Office of the Maine Attorney General
6 State House Station
Augusta, Maine 04333-0006
207-626-8800
Attorneys for State Defendants

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

JURISDICTIONAL STATEMENT ........................................................................2

STATEMENT OF THE ISSUES.............................................................................2

STATEMENT OF THE CASE.................................................................................3

    History of mandatory immunizations in Maine ...............................................3

    Vaccinations and COVID-19 ...........................................................................6

    Adoption of the COVID-19 vaccination requirement......................................8

    Procedural history ..........................................................................................11

SUMMARY OF THE ARGUMENT .....................................................................13

STANDARD OF REVIEW ...................................................................................14

ARGUMENT .........................................................................................................15

I.    The Workers failed to state a First Amendment Free Exercise claim
     based on the unavailability of a religious exemption to Maine's
     COVID-19 vaccination requirement ..........................................................15

     A.    The Amended Complaint failed to allege a plausible violation
       of the Workers' Free Exercise rights based on coercion, and the
       Workers did not present this argument to the District Court................16

     B.    The District Court correctly determined Maine's COVID-19
       vaccination requirement is a neutral law of general applicability
       and the Amended Complaint failed to allege facts sufficient
       to state a violation of their Free Exercise Rights under rational
       basis review ........................................................................................18

1.    The District Court correctly held that the Rule and Statute
      are neutral as to religion ................................................................18

2.    The District Court correctly held that the Rule and Statute
      are laws of general applicability ....................................................21

3.    The District Court correctly concluded that a medical
      exemption is not comparable to a religious exemption ................27

4.    The District Court correctly applied rational basis review ...........34

C.    The Amended Complaint failed to allege facts sufficient to
      state a violation of the Workers' Free Exercise rights under strict
      scrutiny review ......................................................................................36

II.  The Workers failed to state a Fourteenth Amendment Equal
     Protection claim based on the unavailability of a religious exemption
     to Maine's COVID-19 vaccination requirement ...........................................39

CONCLUSION ......................................................................................................42

CERTIFICATE OF COMPLIANCE ......................................................................43

CERTIFICATE OF SERVICE ...............................................................................44

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alston v. Spiegel*, 988 F.3d 564 (1st Cir. 2021) ....................................................15

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ..................................................................38

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................15

*Braunfeld v. Brown*, 366 U.S. 599 (1961) ................................................................18

*Brieding v. Eversource Energy*, 939 F.3d 47 (1st Cir. 2019) ..................................14

*Cantwell v. Connecticut*, 310 U.S. 296 (1940) ........................................................15

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993) ........................................................................................ passim

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)..............................35

*Commack Self-Serv. Kosher Meats, Inc. v. Hooker*,
    680 F.3d 194 (2d Cir. 2012) ................................................................................16

*Cunningham v. City of Shreveport*,
    407 F. Supp. 3d 595 (W.D. La. 2019)..................................................................23

*Does 1-3 v. Mills*, 142 S. Ct. 7 (2021) ....................................................................36

*Does 1-3 v. Mills*, 142 S. Ct. 1112 (2022) ................................................................1

*Does 1-6 v. Mills*, 16 F.4th 20 (1st Cir. 2021) ................................................ passim

*Does 1-3 v. Mills*, 39 F.4th 20 (1st Cir. 2022) ........................................................11

*Doherty v. Merck & Co.*, 892 F.3d 493 (1st Cir. 2018)............................................35

*Dr. A v. Hochul*, 142 S. Ct. 552 (2021) ...................................................................32

*Dr. T. v. Alexander-Scott*, 579 F. Supp. 3d 271 (D.R.I. 2022)................................33

*Emp't Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872 (1990)............ passim

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*,
  170 F.3d 359 (3d Cir. 1999) ..................................................................... 23, 25, 26

*Frese v. Formella*, 53 F.4th 1 (1st Cir. 2022)..........................................................14

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021)................................... passim

*Hines v. S.C. Dep't of Corr.*, 148 F.3d 353 (4th Cir. 1998) ...................................18

*Iverson v. City of Boston*, 452 F.3d 94 (1st Cir. 2006)...........................................36

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905) ....................................................35

*Johnson v. Robison*, 415 U.S. 361 (1974) ..............................................................40

*Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29 (1st Cir. 2022)............15

*Litzman v. N.Y City Police Dep't*,
  No. 12 Civ. 4681, 2013 WL 6049066 (S.D.N.Y. Nov. 15, 2013) ......................23

*Locke v. Davey*, 540 U.S. 712 (2004) ....................................................................39

*M.A. on behalf of H.R. v. Rockland County Dep't of Health*,
  53 F.4th 29 (2d Cir. 2022).................................................................................20

*Maryville Baptist Church, Inc. v. Beshear*,
  957 F.3d 610 (6th Cir. 2020)..............................................................................31

*McCullen v. Coakley*, 573 U.S. 464 (2014).............................................................37

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ..................................................................39

*Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008)........................................................16

*Phillips v. City of New York*, 775 F.3d 538 (2d Cir. 2015).....................................38

*Prince v. Massachusetts*, 321 U.S. 158 (1944)........................................................27

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
  141 S. Ct. 63 (2020)..................................................................................... passim

*Romer v. Evans*, 517 U.S. 620 (1996) .............................................................. 41, 42

*S. Bay United Pentecostal Church v. Newsom*,
  141 S. Ct. 716 (2021)..........................................................................................28

*Sherbert v. Verner*, 374 U.S. 398 (1963) ...................................................23

*Singh v. McHugh*, 185 F. Supp. 3d 201 (D.D.C. 2015)..........................................23

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021) ..................................................... passim

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707 (1981) ..........................37

*Thomas v. Rhode Island*, 542 F.3d 944 (1st Cir. 2008) .................................. 17, 36

*Toledo v. Sanchez*, 454 F.3d 24 (1st Cir. 2006)..........................................39

*Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*,
    524 F.3d 315 (1st Cir. 2008) .................................................14

*United States v. Lee*, 455 U.S. 252 (1982)...............................................16

*Valente v. Bd. of Env'tl Prot.*, 461 A.2d 716 (Me. 1983) ........................................30

*Walsh v. Massachusetts*, 618 F.2d 156 (1st Cir. 1980)...........................................39

*Washington v. Davis*, 426 U.S. 229 (1976) .............................................41

*We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) .......................26

*Wirzburger v. Galvin*, 412 F.3d 271 (1st Cir. 2005)................................. 18, 39, 40

*Workman v. Mingo Cnty. Bd. of Educ.*,
    419 F. App'x 348 (4th Cir. 2011)................................................ 37, 39

*Yellowbear v. Lampert*, 741 F.3d 48 (10th Cir. 2014)..................................... 23, 36

## Constitutions and Statutes

U.S. Const. amend. I ..............................................................15

28 U.S.C.A. § 1291 ...............................................................2

28 U.S.C.A. § 1331 ................................................................2

42 U.S.C. § 1983 ..................................................................2

42 U.S.C. § 1985 .................................................................11

Me. Const. art. IV, pt. 3, § 17 ........................................................................6

20-A M.R.S.A. § 6359(3) (2008)...................................................................4

22 M.R.S.A. § 802(4-B) (Supp. 2022)................................... 3, 24, 33, 41

22 M.R.S.A. § 802(4-B) (2019)......................................................................4


**Procedural Rules**

Fed. R. Civ. P. 12(b)(1)...............................................................................11

Fed. R. Civ. P. 12(b)(6)................................................................ 11, 14, 15


**Regulations**

10-144 Me. Code R. ch. 164 .......................................................... passim

16-163 C.M.R. ch. 21 (2022)......................................................................9

42 C.F.R. § 482.42(g) (2022)................................................................. 33

42 C.F.R. § 483.80(i) (2022).....................................................................33

*Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination*, 86 Fed. Reg. 61,555 (proposed Nov. 5, 2021)................... 32, 33, 34


**Other Authorities**

P.L. 1989, ch 487, § 11 (eff. Sept. 30, 1989)............................................3

Maine CDC, Maine Health Care Worker COVID-19 Vaccination Dashboard, https://www.maine.gov/dhhs/mecdc/infectious-disease/immunization/publications/health-care-worker-covid-vaccination-rates.shtml..............................................................................................9

Centers for Disease Control & Prevention, Summary Document for Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States (Dec. 6, 2022),

iv

https://www.cdc.gov/vaccines/covid-19/downloads/summary-interim-clinical-considerations.pdf................................................................................................34

Centers for Disease Control & Prevention, Selected Adverse Events Reported after COVID-19 Vaccination (last visited Feb. 21, 2023), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/adverse-events.html................................................................................................34

# INTRODUCTION

Effective November 10, 2021, the Maine Department of Health and Human Services (Department) and the Maine Center for Disease Control and Prevention (Maine CDC) amended Maine's healthcare worker vaccination regulation to require that designated healthcare facilities (DHCFs) ensure their employees are vaccinated against COVID-19. *Cf. Does 1-6 v. Mills*, 16 F.4th 20 (1st Cir. 2021) (addressing the emergency amendment of the same rule, which amendment was statutorily time limited to 90 days), *cert. denied sub nom. Does 1-3 v. Mills*, 142 S. Ct. 1112 (2022). The seven Appellants (Workers) were employed by a DHCF operated by one of the non-State official Defendant-Appellees (Provider Defendants).  The Workers refused to be vaccinated against COVID-19 because of their sincerely held religious beliefs, and brought suit against Janet T. Mills, Maine's Governor; Jeanne M. Lambrew, Department Commissioner; and Dr. Nirav D. Shah, Maine CDC Director (collectively, State Defendants) and the Provider Defendants, who ultimately terminated the Workers' employment.  Upon State Defendants' timely motion, the District Court rejected the Workers' various constitutional challenges to the State's healthcare worker vaccination requirement and dismissed the Workers' case.

The Workers ask this Court to revive their claims, but their arguments, as well as the factual allegations in their Amended Complaint, are insufficient to the task. The District Court faithfully applied this Court's and the Supreme Court precedent

to conclude that Maine's healthcare worker vaccination framework, which permits a medical exemption, but non a religious exemption, does not violate the Workers' Free Exercise or Equal Protection rights. State Defendants request that this Court affirm the District Court's dismissal of the Workers' Amended Complaint.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction because this case involves questions of federal law arising under the United States Constitution and claims brought under 42 U.S.C. § 1983. *See* 28 U.S.C.A. § 1331 (Westlaw current through Pub. L. 117-262).

This Court has jurisdiction because this is an appeal of a final judgment entered in favor of State Defendants by the District Court. 28 U.S.C.A. § 1291 (Westlaw current through Pub. L. 117-262).

## STATEMENT OF THE ISSUES

I.    Whether the District Court correctly determined that the Workers failed to plead a plausible violation of their Free Exercise rights from Maine's healthcare worker COVID-19 vaccine requirements, which permits a medical exemption but not a religious exemption.

II.   Whether the District Court correctly determined that the Workers failed to plead a plausible violation of their Equal Protection rights from Maine's healthcare worker COVID-19 vaccine requirements, which permits a medical

exemption but not a religious exemption.

## STATEMENT OF THE CASE

**History of mandatory immunizations in Maine.**  For more than 30 years, the State of Maine has mandated that certain healthcare facilities require their employees to be vaccinated against several highly communicable diseases.  *See* P.L. 1989, ch. 487, § 11 (eff. Sept. 30, 1989) (requiring employees of hospitals to be vaccinated against measles and rubella).  Under Maine's current framework, the diseases that employees of DHCFs must be immunized against are specified in state regulations adopted by the Department and Maine CDC: Immunization Requirements for Healthcare Workers, 10-144 Me. Code R. ch. 264.  The exemptions to these vaccination requirements are provided in state statute.  *See* 22 M.R.S.A. § 802(4-B) (Supp. 2022) [hereinafter, "Statute"].  This sensible bifurcation vests medical experts and public health officials with the authority and responsibility to determine what diseases healthcare workers must be immunized against, but leaves the Maine Legislature and the political process to determine what exemptions are available.  For example, in April of 2021, the Department and Maine CDC amended the healthcare worker vaccination regulation to require vaccination against influenza.  Appendix [hereinafter, "A."] 198, § 2(6).

Up until 2019, there were three statutory exemptions to the healthcare worker vaccine requirements: when vaccination was (A) medically inadvisable, (B) contrary

to a sincerely held religious belief, or (C) contrary to a sincere philosophical belief. 22 M.R.S.A. §§ 802(4-B)(A), (B) (2019); *see also* 20-A M.R.S.A. §§ 6359(3)(A), (B) (2008) (providing same exemptions to required vaccinations for schoolchildren). By 2018, vaccination rates for required vaccinations for Maine school children and healthcare workers had fallen below the population-wide rates of vaccination necessary to prevent the spread of those communicable diseases. A. 56-60, 203; ECF Nos. 48-3 & 48-5.

In 2019, a bill was introduced in the Maine Legislature to eliminate nonmedical exemptions from all of the State's mandatory vaccination programs in order to reverse the trajectory of Maine's falling vaccination rates; stop communicable diseases from taking root in schools, healthcare facilities, and daycare facilities; and protect persons who are unable to be vaccinated for medical reasons. A. 53-55 (L.D. 798 (129th Legis. 2019)); A. 56-60; *see also* ECF Nos. 48-3 & 48-5. Maine State Representative Ryan Tipping, the sponsor of L.D. 798, provided testimony on the bill's purpose. He explained that the struggle of fighting infectious disease

> can only happen when we work together as a society to raise our immunity threshold to the point where a disease cannot take root, and then keep it at that level until there is no source of that disease left to defend against. . . .
>
> But what we are seeing now is a rising tide of diseases that previous generations worked tirelessly to defeat. . . .

. . . the bill before you is an attempt to reverse this trend and ensure that now and into the future our schools and daycares will be places where children can learn and grow without fear of serious, harmful, preventable diseases. The bill removes non-medical exemptions to the decades-old immunization requirements for the institutions where our children spend most of their waking hours. It also tightens the exemptions for health care workers, many of whom are here today, and daycare employees. . . .

These changes are necessary if we want to prevent headlines [regarding measles outbreaks] from Washington and New York from appearing on the front page of the Bangor Daily News. . . .

These headlines and stories are particularly troubling to people who cannot be immunized, whether due to illness or age. You will hear from some of these people today, . . . including parents of immunocompromised or immunosuppressed children who will never achieve the immunities needed to protect them and rely on their neighbors' vaccinations in order to even be in school at all. You will also hear from people who cannot receive the immunizations for medical reasons.

A. 56-58. As explained by then Acting Maine CDC Director Nancy Beardsley,

[w]hen someone chooses not to vaccinate, that decision can jeopardize the health and safety of entire communities, especially the weakest and most vulnerable among us. Those who are unable to be vaccinated, such as young infants, pregnant mothers or children with cancer, face the most risk from disease complications. . . .

. . . Evidence shows that states that have tighter exemption laws have higher immunization rates, and less disease.

A. 60. In the course of the Maine Legislature's consideration of L.D. 798, the Joint Standing Committee on Education and Cultural Affairs heard testimony from hundreds of Mainers, in support of, in opposition to, and neither for nor against the bill. A. 56-60; *see also* ECF Nos. 48-3, 48-5 to 48-18. The bill, as amended, was

also the topic of significant debate and discussion on the floors of both the Maine House and Senate.  A. 67-148.  For example, Maine State Senator Heather Sanborn spoke of the bill's purpose: "I rise again today to urge this Body to follow science and to vote in favor of Enactment to protect those who cannot be immunized.  Those include newborns.  They include severely immuno compromised or medically weakened individuals and the very old may also be very susceptible to communicable diseases."  A. 146.

In May of 2019, the Maine Legislature voted to eliminate nonmedical exemptions to the State's vaccination requirements for healthcare workers, daycare employees, schoolchildren, and college students.  A. 149-51.  The enacted law was the subject of a statewide people's veto referendum on March 3, 3020, *see* Me. Con. art. IV, pt. 3, § 17; 72% of Maine voters approved the 2019 amendment to the Statute.  A. 265; ECF No. 62-1.  The portion of the law applicable to healthcare workers took effect in April of 2020.  A. 265; ECF No. 62-1.  In order to comply with the statutory change, the Department removed nonmedical exemptions from its regulations in April 2021.  A. 199, § 3.

**Vaccinations and COVID-19**.  The gold standard to prevent the spread of communicable diseases, including COVID-19, is vaccination.  A. 260.  Vaccination protects not only the individual vaccinated, but also the individual's community when population-level immunity—so-called "herd immunity"—is achieved.

A. 260.  Population immunity is epidemiological phenomenon whereby medically vulnerable populations, which includes both the vaccinated and unvaccinated, are protected against the spread of a highly contagious diseases based on sufficiently high vaccination levels within their community.  A. 260-61.  The level of vaccination required to achieve population immunity varies with the contagiousness of the disease.  A. 260.

COVID-19 is a respiratory illness caused by a coronavirus, known as SARS-CoV-2.  A. 259.  COVID-19 was first identified in China in January 2020, but has since spread to 222 countries.  A. 259.  COVID-19 is an airborne viral disease that most commonly spreads between people who are in close contact with one another. A. 304, ¶ 68.  It spreads through respiratory droplets or small particles, such as those in aerosols, produced when an infected person coughs, sneezes, sings, talks, or breathes.  A. 304, ¶ 68.  People who are closer than 6 feet from the infected person for more than 15 cumulative minutes are most likely to get infected.  A. 259.

Given the length of the pandemic, several variants of SARS-CoV-2 have emerged over time.  A. 260.  All variants spread at a rate faster than influenza spreads and exhibit asymptomatic transmission, meaning persons infected with the virus can spread it others without experiencing any symptoms.  A. 260.  In the summer and fall of 2021, the predominant variant was the highly transmissible Delta variant.  A. 259-60.  The Delta variant is more than twice as contagious than previous variants

of the virus that causes COVID-19 and may cause more serious illness in the unvaccinated.  A. 260.  In light of the Delta variant, epidemiological models suggest that at least 90% of a population would need to be vaccinated in order to achieve population-level immunity for COVID-19.  A. 260.

Three COVID-19 vaccines are generally available to the public.  A. 261; A. 300-02, ¶¶ 51-57.  In Maine, the rate of COVID-19 infection is 7.1 times among the unvaccinated as compared to those who are fully vaccinated, and unvaccinated individuals are 23 times more likely to be hospitalized with COVID-19 than those who have been vaccinated.  A. 261.

**Adoption of the COVID-19 vaccination requirement.**  Throughout the pandemic, Maine CDC has tracked statewide confirmed cases of COVID-19, including cases amongst healthcare workers, and investigated outbreaks of COVID-19, including in healthcare settings.  A. 259.  Most healthcare facility outbreaks in Maine are the result of healthcare workers bringing COVID-19 into the facility.  A. 261.  Outbreaks in certain DHCFs, particularly hospitals, nursing homes, and long-term care facilities have continued to occur, despite the widespread use of personal protective equipment (PPE) in these settings.  A. 261.

Maine CDC also tracked COVID-19 vaccination rates of healthcare workers.  A. 260.  For the monthly reporting period ending July 31, 2021, the rate of COVID-19 vaccination among healthcare workers in certain DHCFs was as follows:

8

- Ambulatory Surgical Centers: 85.9%
- Assisted Housing Facilities: 74.7%
- Hospitals: 80.3%
- Intermediate Care Facilities for Individuals with Intellectual Disabilities: 68.2%
- Nursing Homes: 73.0%

A. 260.[1] All facilities fell significantly below the minimum 90% threshold currently believed to be needed to reduce the likelihood of facility-based outbreaks of the Delta variant of COVID-19. A. 260. Further, there had been more than 300 outbreaks of COVID-19 in DHCFs since the beginning of the pandemic. A. 272.

On August 12, 2021, the Department and Maine CDC revised the healthcare worker vaccination rule on an emergency basis. Among other changes,[2] the emergency amendment added COVID-19 to the list of vaccinations that DHCFs

---

[1] The figures cited above are averages of all facility types; some facilities had vaccination rates greater than the average, and some had vaccination rates lower than the average. For the monthly period that ended October 30, 2021, COVID-19 vaccination rates among healthcare workers in certain DHCFs were as follows, indicating the effectiveness of the amendment:
- Ambulatory Surgical Centers: 92.6%;
- Assisted Housing Facilities: 96.8%;
- Hospitals: 98.1%;
- Intermediate Care Facilities for Individuals with Intellectual Disabilities: 95.6%; and
- Nursing Homes: 96.8%.

Maine CDC, Maine Health Care Worker COVID-19 Vaccination Dashboard, https://www.maine.gov/dhhs/mecdc/infectious-disease/immunization/publications/health-care-worker-covid-vaccination-rates.shtml (last visited Feb. 23, 2023). Again, these figures are averages.

[2] In addition, the COVID-19 vaccination requirement in the emergency amendment also applied to Dental Health Practices (DHPs) and Emergency Services (EMS) Organizations. A. 212, § 2(B). The Department did not include DHPs and DHCFs in the final version of the rule because there had been "no identified COVID-19 outbreaks originating from a [DHP] in Maine." A. 272. EMS Organizations were removed from the Rule to avoid conflict with the COVID-19 vaccination requirements adopted for EMS workers by the Maine Emergency Management System Board. A. 259, 272. *See* 16-163 C.M.R. ch. 21 (2022).

must require for their employees.  A. 212, § 2(A)(7).  *See also* A. 297, ¶¶ 36-38.

Because the emergency amendment was statutorily limited to 90 days, the Department and Maine CDC proposed and then adopted a permanent amendment to the healthcare worker vaccination rule (Rule).  A. 251-57.  In adopting the amendment, the Department considered relevant COVID-19 vaccination rates amongst healthcare workers, data on COVID-19 outbreaks in DHCFs, and Maine-specific data on infection and hospitalization rates from COVID-19.  A. 259.  Based on this and other information, the Department determined that requiring COVID-19 vaccinations for healthcare workers in DHCFs was necessary to protect public health for the protection of individual patients; protection of individual workers; protection of the State's healthcare infrastructure, including its workforce; and reducing the likelihood of outbreaks of COVID-19 in covered facilities.  A. 261-62; *see* A. 259-62 (explaining complete factual bases for the Rule).  The Department evaluated other measures to protect against the spread of COVID-19, including the use of PPE, daily or periodic testing, and various medical treatments, but determined that vaccination was the most effective method to achieve these goals.  A. 262, 269-70.

The Rule became effective November 10, 2021, and requires DHCFs to ensure their employees are vaccinated against COVID-19.  A. 253, § 2(A)(7).  The Rule applies to onsite employees of DHCFs; it does not apply to employees who work remotely and do not have direct contact with patients.  A. 252, § 1(H).

**Procedural history**. The present case was filed on August 25, 2021, by nine pseudonymous healthcare workers that were subject to the COVID-19 vaccination requirement of the emergency amendment to the healthcare worker vaccination rule. A. 11. Most of the procedural history of this case has been recounted already in this Court's previous decisions. *See Does 1-6*, 16 F.4th at 28-29 (detailing procedure related to preliminary injunctive phase of this case); *Does 1-3 v. Mills*, 39 F.4th 20, 23-24 (1st Cir. 2022) (detailing procedure related to pseudonymity issue).

Once the preliminary injunction portion of the case had concluded, State Defendants moved to dismiss plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). A. 21. On July 11, 2022, the plaintiffs filed their Amended Complaint, which named as plaintiffs only the seven Workers to this appeal. A. 25. The Amended Complaint is substantively identical to the original complaint.

The District Court analyzed the Amended Complaint and granted State Defendants' motion on August 18, 2022.[3]   A. 26. The Workers challenge the dismissal of only two claims against State Defendants: their Free Exercise Claim and their Equal Protection Claim. Appellants' Brief [hereinafter, "Br."] 1-2, 21-44.

With respect to the Workers' Free Exercise claim, the District Court

---

[3] The District Court dismissed all claims against Governor Mills and all damage claims against the State Defendants pursuant to Rule 12(b)(1). Addendum [hereinafter, "Add."] 12. The District Court also dismissed the Workers' Supremacy Clause claim and their civil conspiracy claim under 42 U.S.C. § 1985 against State Defendants pursuant to Rule 12(b)(6). Add. 34-36.  .

concluded that both the Rule and Statute were neutral.  Add. 24-27.  The District Court reasoned that both the Rule and the Statute were facially neutral because neither mentioned religious beliefs or practices.  Add. 24-25.  The District Court also examined whether the Amended Complaint alleged facts to show that the object of the Rule or Statute, including the Legislature's elimination of nonmedical exemptions, was "to discriminate against religious belief, practices or motivations" or single out a specific class of healthcare workers for disparate treatment.  Add. 25-27.  The District Court determined that the Amended Complaint included no allegations suggestive of "religious animosity" or "public statements or other facts" that could, "if proven, establish . . . a hostility to religious beliefs" with respect to the adoption of the Rule or the enactment of the Statute.  Add. 27.  The District Court also determined that the Maine Legislature's elimination of nonmedical exemptions was not directed at persons with religious objections to vaccination.  Add. 25-26.  The Rule and Statute were therefore neutral.  Add. 28.

Turning to general applicability, the District Court concluded that the Rule and the Statute were laws of general applicability.  Add. 28-32.  The District Court applied the test for general applicability stated in *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021): whether the government regulation treats "any comparable secular activity more favorably than religious exercise."  The District Court rejected the Workers' arguments that the correct inquiry was based on comparative risks

12

between persons claiming medical exemptions and religious exemptions.   Add. 28-29.  Instead, the District Court looked to the State's actual interests in the Rule and Statute and determined them to be "in harmony" with the statutory medical exemption.   Add. 29-30.   The District Court also concluded that the Amended Complaint did not allege facts to show that Maine had a made an impermissible value judgment in permitting a medical exemption, but not a religious exemption. Add. 31-32.

Having concluded the Rule and Statute were both neutral and generally applicable, the District Court applied rational basis review to the Workers' Free Exercise claim.   Add. 32-33.   The District Court concluded that the Amended Complaint did not allege facts to support the Workers' claim that the COVID-19 vaccine requirement was not rationally related to the State's legitimate goals.  Add. 32.

With respect to the Workers' Equal Protection claim, the District Court concluded that the Rule and Statute were also subject to rational basis review, and the Amended Complaint did not allege facts to support the Workers' claim that the COVID-19 vaccine requirement was not rationally related to the State's legitimate goals. Add. 33-34.  This timely appeal followed.  A. 26.

## SUMMARY OF THE ARGUMENT

The availability of a medical exemption, but not any other exemption, to

13

Maine's vaccination requirements for healthcare workers does not violate the Free Exercise Clause or the Equal Protection Clause.  Instead, as the District Court held, the Rule and Statute are neutral laws of general applicability, that do not implicate fundament rights or suspect classifications.  The District Court correctly applied rational basis review to the Workers' Free Exercise and Equal Protection claims. Because the Rule and Statute are rationally related to the State's legitimate interests in protecting patients, healthcare workers, and medically vulnerable persons; protecting the State's healthcare capacity; and reducing the likelihood of facility outbreaks of COVID-19, the Workers' claims were properly dismissed.  Even if strict scrutiny were to apply, the Rule and the Statute are narrowly tailored to serve the State's compelling interests.  The Workers failed to plead sufficient facts to plausibly allege otherwise in their Amended Complaint.

## STANDARD OF REVIEW

This Court reviews de novo the District Court's dismissal of a complaint under Rule 12(b)(6).  *Frese v. Formella*, 53 F.4th 1, 5 (1st Cir. 2022).  In ruling on a Rule 12(b)(6) motion to dismiss, the District Court may consider the well-pleaded factual allegations in the complaint, documents referred to or attached to the complaint, documents integral to the complaint, and any relevant matter that can be judicially noticed, such as public records.  *Brieding v. Eversource Energy*, 939 F.3d 47, 49 (1st Cir. 2019); *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st

14

Cir. 2008).

To survive a Rule 12(b)(6) motion, Plaintiffs must state a plausible claim to relief, based on the complaint and other materials that may be properly considered. *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021). A complaint will survive a motion to dismiss only when it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In this review, "conclusory legal allegations" and "factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture" are disregarded. *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33–34 (1st Cir. 2022) (cleaned up); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (cleaned up)). Thus, Plaintiffs' allegations, if true, must state more than a merely conceivable claim for relief. *Iqbal*, 556 U.S. at 678.

## ARGUMENT

**I.   The Workers failed to state a First Amendment Free Exercise claim based on the unavailability of a religious exemption to Maine's COVID-19 vaccination requirement.**

The First Amendment's Free Exercise Clause provides in pertinent part: "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I; *Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940)

(incorporating Free Exercise Clause against the States via the Fourteenth Amendment).  The Free Exercise Clause protects "the right to believe and profess whatever religious doctrine one desires," *Emp't Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990), but it "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his [or her] religion prescribes (or proscribes),'" *id.* at 879 (quoting *United States v. Lee*, 455 U.S. 252, 263 n.3 (1982) (Stevens, J., concurring in judgment)).  Under *Smith*, a neutral law of general applicability is constitutionally valid if it is supported by a rational basis, even when applied to religious practices.  *Parker v. Hurley*, 514 F.3d 87, 95 (1st Cir. 2008) (describing *Smith* as "mere rationality standard"); *see also Commack Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 212 (2d Cir. 2012) (neutral and generally applicable laws subject to rational basis review in Free Exercise analysis).

The District Court correctly applied these precedents and concluded that the Workers had failed to plausibly allege a violation of their Free Exercise rights.

### A.   The Amended Complaint failed to allege a plausible violation of the Workers' Free Exercise rights based on coercion, and the Workers did not present this argument to the District Court.

"The evil prohibited by the Free Exercise Clause is governmental compulsion either to do or refrain from doing an act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or required by one's religion." *Parker*, 514

16

F.3d at 105 (cleaned up).  The Workers assert that their Amended Complaint alleged that State Defendants had a coercive effect on their religious practice, Br. 20-21, but this Court should reject their argument for two reasons.

First, the Workers never presented this argument to the District Court in opposition to State Defendants' motion to dismiss.  Arguments not presented to the District Court cannot be raised for the first time on appeal.  *See Thomas v. Rhode Island*, 542 F.3d 944, 949 (1st Cir. 2008).

Second, the Amended Complaint does not allege plausibly any instance of coercion.  Instead, as the Workers explained, their "sincerely held religious beliefs compel[led] them to abstain from obtaining or injecting any the [available COVID-19 vaccines] into their bod[ies], regardless of the perceived benefit or rationale."  A. 302, ¶ 58.  Indeed, all of the Workers declined to receive a COVID-19 vaccination. A. 310-12, ¶¶ 95-101.  The Amended Complaint includes no allegations showing that the Workers acted in a way contrary to the demands of their religious beliefs or practices.

Further, the Rule is a state regulation primarily governing DHCFs.  A. 251-57. The Workers themselves did not violate the rule or any other Statue authority when they refused vaccination against COVID-19.  "The Supreme Court [is reluctant] to strike down 'legislation which imposes only an indirect burden on the exercise of religion, i.e., legislation which does not make unlawful the religious practice itself.'"

*Wirzburger v. Galvin*, 412 F.3d 271, 281 (1st Cir. 2005) (quoting *Braunfeld v. Brown*, 366 U.S. 599, 606 (1961)); *accord Smith*, 494 U.S. at 878 ("if prohibiting the exercise of religion . . . is not the object of the [law] but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended.").

**B.    The District Court correctly determined Maine's COVID-19 vaccination requirement is a neutral law of general applicability and the Amended Complaint failed to allege facts sufficient to state a violation of their Free Exercise Rights under rational basis review.**

**1.    The District Court correctly held that the Rule and Statute are neutral as to religion.**

"A law is considered neutral if it proscribes conduct without regard to whether that conduct is religiously motivated or not." *Hines v. S.C. Dep't of Corr.*, 148 F.3d 353, 357 (4th Cir. 1998). The neutrality inquiry begins with the text of the law in question. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Id.*

The District Court properly reasoned that neither the text of the Rule nor the text of the Statute refers to religious practice, conduct, belief, or motivation and are therefore facially neutral. Add. 24-25. The Workers do not seriously contest this holding. Br. 21-22.

Because facial neutrality is not dispositive, the District Court then addressed whether the object of the Rule or Statute was "to discriminate against religious beliefs, practices, or motivations." Add. 25 (citing *Lukumi*, 508 U.S. at 534). In evaluating neutrality, the District Court, in accordance with *Lukumi*, looked to "the historical background of the" Rule and Statute, "the specific series of events leading to the[ir] enactment," and their "legislative or administrative history." Add. 25 (quoting *Lukumi*, 508 U.S. at 540).

The record before the District Court demonstrated that the Maine Legislature (not the State Defendants) amended the Statute in 2019 and eliminated both religious and philosophical exemptions from all of the State's mandatory immunizations. A. 149-51. That amendment to the Statute was the topic of an unsuccessful People's Veto in 2020. A. 265; ECF No. 62-1. Therefore, the elimination of nonmedical exemptions was effective as of April 2020, A. 265; ECF No. 62-1, not August of 2021 as the Workers claim, Br. 22. In April 2021, Maine CDC and the Department amended its regulations to comply with the already effective statutory changes by eliminating all references to nonmedical exemptions. *Compare* A. 179, § 3, *with* A. 199, § 3.

The District Court analyzed the Amended Complaint in light of this history. The trial court looked to the timing and circumstances of the amendment to the Statute, along with any public statements made by officials, that could have

19

suggested hostility to religious beliefs. Based on this analysis, the District Court correctly concluded that the Amended Complaint did not allege facts suggesting religious animosity or other hostility to religious beliefs were the motivating factor in the elimination of nonmedical exemptions in the Rule and Statute. Add. 27. *Cf. M.A. on behalf of H.R. v. Rockland County Dep't of Health*, 53 F.4th 29, 37-38 (2d Cir. 2022) (concluding derogatory comments made by public official about persons opposed to vaccination for religious reasons created issue of fact as to whether declaration issued by that same official was targeted at religious objectors and vacating entry of summary judgment). The COVID-19 vaccine mandate, as implemented through the Rule and Statute, was therefore neutral. Add. 28.

The Workers challenge the District Court's decision with respect to neutrality. They claim the District Court's sole rationale for its neutrality finding was the fact that removal of the religious and philosophical exemptions occurred before the adoption of the COVID-19 vaccine requirement. Br. 21-22. As shown, that argument is at odds with the District Court's decision; timing was just one aspect of the District Court's analysis. Even so, the Workers claim that the timing of the adoption of the Rule and Statute is irrelevant because they were injured when the COVID-19 vaccine requirement was adopted. Br. 22. That argument conflates a standing inquiry with a neutrality inquiry—when the Workers claim to have suffered a particularized injury does not address the circumstances surrounding or motivation

for the adoption of the Rule and Statute.

Last, the Workers argue, in reliance on *Lukumi*, 508 U.S. at 534, that the Rule and Statute are not neutral because religious exemptions were treated less favorably than medical exemptions, which they claim means they were targeted for their beliefs.  Br. 24.  The Workers ignore, however, *Lukumi* evaluated the same factors as the District Court in determining whether the ordinance at issue was neutral or targeted persons with religious beliefs: "Relevant evidence includes, among other things, the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body."  *Lukumi*, 508 U.S. at 540.  The Amended Complaint included no allegations regarding these factors that suggested animosity or hostility. Add. 27.

### 2. The District Court correctly held that the Rule and Statute are laws of general applicability.

The general applicability requirement prohibits the government from selectively "impos[ing] burdens only on conduct motivated by religious belief," *Lukumi,* 508 U.S. at 543; "consider[ing] the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions,'" *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1871 (2021) (quoting *Smith*, 494 U.S. at 884); or "prohibit[ing] religious conduct while permitting secular conduct that undermines

21

the government's asserted interests in a similar way," *Fulton*, 141 S. Ct. at 1871. The District Court addressed all of these methods of analysis and correctly found that the Rule and Statute were laws of general applicability.

First, the Rule and Statute apply equally to all DHCFs and not "only against conduct with a religious motivation." *Lukumi*, 508 U.S. at 542-43. DHCFs must require their onsite employees to show proof of vaccination against COVID-19, unless the employee is medically exempt. A medical exemption does not defeat general applicability by imposing burdens only on those with religious beliefs. The Statute permits employees to claim a medical exemption to the Rule's mandatory vaccination requirements; exemptions based on any other reason, religious or otherwise, are not permitted. As the District Court recognized, the COVID-19 vaccine mandate "places an equal burden on . . . philosophical or politically-based objections to state-mandated vaccination requirements[] to the same extent that it burdens religious" objections. Add. 31. An individual's personal, philosophical, political, or religious beliefs simply do not come into play under the Statute.[4]

The Workers disagree, claiming that the Rule and Statute reflect value judgment, favoring a secular, medical exemptions over a religious exemption. Br. 29-31. But, as the District Court recognized, whether a medical exemption reflects

---

[4] Any individual who may have nonmedical reasons to object to vaccinations could still qualify for a medical exemption: Maine law distinguishes not by belief, but by medical condition.

a value judgment that discriminates against religious motivation must be evaluated based on the policy objective to be achieved. *Cf. Yellowbear v. Lampert*, 741 F.3d 48, 61 (10th Cir. 2014) (Gorsuch, J.) (explaining a State may "identify[] a qualitative or quantitative difference between the particular religious exemption requested and other secular exceptions already tolerated, and then explain[] how such differential treatment furthers" the State's concern). As the District Court held, "[e]xempting individuals whose health will be threatened if they receive a COVID-19 vaccine is an essential, constituent part of a reasoned public health response to the COVID-19 pandemic. It does not express or suggest a discriminatory bias against religion." Add. 31. Put another way, Maine's vaccination requirement and the statutory medical exemption further the same goal.[5]

Second, the medical exemption to the Rule is not a "mechanism for individualized exemptions," wherein the government has discretion to allow an exemption "based on the circumstances" of each claimant. *Fulton*, 141 S. Ct. at 1877 (quotation marks omitted); *see also Sherbert v. Verner*, 374 U.S. 398, 406 (1963). The constitutional defect in *Fulton* and *Sherbert* was that each state law allowed for *government officials* to exercise broad discretion to exempt a person or

---

[5] In contrast, medical exemptions that do not further the stated governmental interest have been found to be an unwarranted value judgment against religious belief. *See, e.g.*, *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 365-66 (3d Cir. 1999); *Cunningham v. City of Shreveport*, 407 F. Supp. 3d 595, 607-08 (W.D. La. 2019); *Singh v. McHugh*, 185 F. Supp. 3d 201, 211-13 (D.D.C. 2015); *Litzman v. N.Y City Police Dep't*, No. 12 Civ. 4681, 2013 WL 6049066, *3 (S.D.N.Y. Nov. 15, 2013).

entity from the state law's requirements. Unlike in *Fulton* and *Sherbert*, the Statute vests discretion regarding medical exemptions with healthcare providers, not State officials. *See Does 1-6*, 16 F.4th at 30.

Maine's medical exemption provides: "A medical exemption is available to an employee who provides a written statement from a licensed physician, nurse practitioner or physician assistant that, in the physician's, nurse practitioner's or physician assistant's professional judgment, immunization against one or more diseases may be medically inadvisable." 22 M.R.S.A. § 802(4-B)(A) (Supp. 2022). Of course, Maine "trusts that these medical professionals, who are licensed by one or more state licensing agencies, will comport with their medical and ethical obligations" in deciding whether to sign such a written statement. A. 266. Nevertheless, neither the Department nor Maine CDCC interrogates the medical professional's judgment in evaluating medical exemptions—just as the State of Oregon did not evaluate why a doctor prescribed a controlled substance in *Smith*, 494 U.S. at 874. Maine's framework for providing medical exemptions to mandatory vaccination requirements is not an unconstitutional, discretionary system of individualized exemptions. Put another way, and contrary to the Workers' claim, *see* Br. 25, 27-28, a single, objective exemption does not render the Statute a system of individualized exemptions that is not generally applicable. Add. 30.

The Workers contend that the District Court's conclusion was incorrect,

claiming that the Third Circuit, in *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999), held that a single exemption is enough to remove a government regulation from being generally applicable. Br. 28-29. But the Workers misrepresent both the facts and the holding of that case. In *Fraternal Order*, police officers challenged the City of Newark's no-facial hair policy that allowed at least two exemptions, including a medical exemption, but not a religious exemption. There, the constitutional defect identified by the court was not the existence of one or more secular exemptions—the problem was that one of those exemptions, the medical exemption, undermined the City's stated goal in maintaining a uniform, easily identifiable appearance for its officers. *Id.* at 365-66. In the same decision, the court explained that a different secular exception—an exemption for undercover officers—was not problematic because those officers were not held out as members of the force. *Id.* at 366. Thus, exempting them from the no-facial-hair policy did not undermine the City's stated interest. *Id.*

On the other hand, the City could not explain why a "medical motivation" for a beard undermined its interest in a uniform, easily identifiable police force less than a religious motivation for a beard. *Id.* In other words, the undercover officer exception was acceptable because it was consistent with the City's goal; the medical exemption was not. *Cf. Smith*, 494 U.S. at 876-82 (categorical exemption for possession of controlled substance prescribed by a physician from criminal law

25

otherwise prohibiting such conduct did not defeat neutrality or general applicability of state law).  Unlike the medical exemption in *Fraternal Order*, Maine's allowance for a medical exemption furthers Maine's interest in protecting the health of healthcare workers, patients, and other medically vulnerable persons.  *See We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 285 (2d Cir. 2021) ("applying the vaccination requirement to individuals with medical contraindications and precautions would not effectively advance" New York's "asserted interest in protecting the health of covered personnel."); *cf. Fraternal Order*, 170 F.3d at 366 ("the Free Exercise Clause does not require the government to apply its laws to activities that it does not have an interest in preventing").  The Workers' reliance on *Fraternal Order* is misplaced.

Third, the inclusion of a medical exemption, but no other exemption, in the Statute does not undermine the State's interests.  In 2018, Maine faced vaccination rates among healthcare workers and school children that had fallen below the rates of vaccination necessary to prevent the spread of those communicable diseases.  A. 56-69, 203; ECF Nos. 48-3 & 48-5 to 48-18. These vaccination rates were not sufficient to protect persons unable to be vaccinated for medical reasons.  A. 56-60. In eliminating nonmedical exemptions to vaccination requirements, the Maine Legislature sought to reverse the trajectory of falling vaccination rates in order to prevent communicable, preventable diseases from spreading in schools, healthcare

facilities, and daycare facilities and protect persons who are unable to be vaccinated for medical reasons. A. 56-60; ECF Nos. 48-3 and 48-5. "[E]xempting healthcare workers whose own health would be endangered if forced to receive a vaccine is in harmony with the purpose of the vaccine requirement itself—to protect public health." Add. 30. As this Court has already explained:

> We conclude that exempting from vaccination only those whose health would be endangered by vaccination does not undermine Maine's asserted interests here: (1) ensuring that healthcare workers remain healthy and able to provide the needed care to an overburdened healthcare system; (2) protecting the health of the those in the state most vulnerable to the virus – including those who are vulnerable to it because they cannot be vaccinated for medical reasons; and (3) protecting the health and safety of all Mainers, patients and healthcare workers alike.

*Does 1-6*, 16 F.4th at 30–31; *see also Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944) ("The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death.").

### 3. The District Court correctly concluded that a medical exemption is not comparable to a religious exemption.

For similar reasons, a medical exemption is not comparable to a religious exemption and does not run afoul of the Supreme Court's gathering restriction decisions. The Workers rely heavily on *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (per curiam), and *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) (per curiam), in claiming that Maine's Rule and Statute are neither neutral nor generally applicable. Br. 25-31.

27

As an initial matter, the Supreme Court's gathering limit cases addressed substantially different concerns than this case presents.  In each case considered by the Supreme Court, the gathering limits imposed by the States applied directly to individuals or houses of worship and made certain types of gatherings, including religious gatherings, unlawful.  *See Tandon*, 141 S. Ct. at 1297; *Roman Cath. Diocese*, 141 S. Ct. at 66-67; *see also S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 717-18 (2021).

But here, there is no direct regulation of religious conduct or exercise.  The Workers remained free to decline vaccination in accordance with their religious beliefs—and in fact did so.  A. 311-12, ¶¶ 95-101.  Further, the Rule imposed no requirement on the individual Workers themselves; the Rule applies to DHCFs.

Moreover, the Workers wrongly apply *Tandon* and *Roman Catholic Diocese*, and the District Court correctly rejected these arguments.  Add. 28-32.

First, Plaintiffs misconstrue *Tandon*.  *Tandon* explained: "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise."  141 S. Ct. at 1296 (second emphasis added).  The Workers blithely claim that religious exemptions and medical exemptions are comparable, without engaging with the necessary analysis.  As the District Court recognized, the Workers ignore the word "comparable" and the next

step of the Supreme Court's analysis. Add. 28-30. The Supreme Court continued: "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." 141 S. Ct. at 1296.

Second, the Workers are forcing the facts of *Roman Catholic Diocese* and *Tandon* onto this case. The Workers argue comparability is based on risks activities pose, Br. 26-27, but that disregards Maine's actual interests in its statutory medical exemptions. Maine's asserted interests are not the same as the governmental interests asserted in *Roman Catholic Diocese* and *Tandon*. In both cases, the States assessed the risks posed by different activities and settings and prohibited or limited religious gatherings while placing no restrictions (or fewer restrictions) on numerous, secular settings based on their risk assessments. *See Roman Cath. Diocese*, 141 S. Ct. at 66 (noting regulation allowed houses of worship in a designated area to admit only ten persons, but "essential" businesses, such as "acupuncture facilities, camp grounds, garages, [and] plants manufacturing chemicals," to "admit as many people as they wish"); *see also Tandon*, 141 S. Ct. at 1297 (noting regulation permitted persons at "hair salons, retail stores, personal care services, movie theaters, [and] private suites at sporting events" "to bring together more than three households at a time," but did not allow the same for "at-home religious exercise"). In each case, the Court rejected the States' actual, asserted risk

assessments because, in the Supreme Court's view, the States singled out religious activity for harsher treatment than secular activity that posed equal risk. *See Fulton*, 141 S. Ct. at 1877 ("A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.").

In contrast, Maine's asserted interest in providing only a medical exemption in the Statute is <u>not</u> based on comparative assessments of risk between secular and religious activities.    In eliminating nonmedical exemptions to vaccination requirements,[6]  the Maine Legislature sought to reverse the trajectory of falling vaccination rates in order to prevent communicable, preventable diseases from spreading in schools, healthcare facilities, and daycare facilities so that all persons medically <u>un</u>able to be vaccinated could be protected by the immunity of his or her classmates or co-workers. As held by the District Court: "A medical exemption to state-mandated vaccines fundamentally different and, therefore, not comparable to

---

[6]  Because the Maine Legislature eliminated nonmedical exemptions in 2019, the Court should look to the Legislature's asserted interests in 2019—not the interests Maine asserted in 2021 in requiring vaccination against COVID-19. *See Fulton*, 141 S. Ct. at 1878-79 (rejecting City's post hoc rationalizations and reinterpretations of disputed contractual language).  The year 2019 is the correct timeframe for another reason: neither the Department nor Maine CDC could have included a religious exemption in the text of the Rule or Final Rule in 2021.  The Maine Legislature instructed the Department and Maine CDC to remove all religious and philosophical vaccine exemptions from their rules in 2019.  A. 151, § 11.  Executive agencies are creatures of statute and have only that authority provided to them by law.  *See Valente v. Bd. of Env'tl Prot.*, 461 A.2d 716, 718 (Me. 1983).  The Department and Maine CDC have no authority to alter statutory language to create a religious exemption.

a religious exemption because a medical exemption aligns with the State's interest in protecting public health and, more specifically, medically vulnerable individuals from illness and infectious diseases, while non-medical exemptions, including religious exemptions, do not." Add. 29.

Framed in the gathering limit context, the Statute's vaccination requirement with only a medical exemption is like a theoretical COVID-19 gathering limit that applied equally to all indoor activities based on square footage of the facility (regardless of whether they were secular or religious), but that exempted hospitals and other healthcare facilities from its purview. Such a gathering limit would further the State's goal of protecting public health without the defects identified by the Supreme Court; the exception also furthers that goal by ensuring all persons can receive medical care. Such a gathering limit surely would have survived any constitutional challenge because, as the District Court held, medical exceptions are not comparable to religious exceptions.

Third, the regulations at issue in the gathering limit cases were riddled with exceptions and exemptions for non-religious activities. *See Tandon*, 141 S. Ct. at 1297 (identifying more than half a dozen non-religious activities excluded from the gathering limits); *Roman Cath. Diocese*, 141 S. Ct. at 66, 69 (identifying dozens of businesses excluded from the gathering limits imposed on houses of worship). The breadth of these exceptions undermined the State's goals. *See Maryville Baptist*

*Church, Inc. v. Beshear*, 957 F.3d 610, 614 (6th Cir. 2020) ("As a rule of thumb, the more exceptions to a prohibition, the less likely it will count as a generally applicable, non-discriminatory law."). But here, the Statute contains only one exemption to mandatory vaccination: a medical exemption. Framed properly, a medical exemption is not comparable to a religious exemption, and the Workers' Amended Complaint does not plausibly allege otherwise.

The Workers insist that comparability is based on risks two activities pose. Br. 26-27. According to the Workers, that requires a one-to-one comparison of the risks posed between themselves and healthcare workers claiming medical exemptions, but their only support for this argument is a non-controlling opinion dissenting from the denial of relief on the Supreme Court's emergency docket. Br. 27 (citing *Dr. A v. Hochul*, 142 S. Ct. 552 (2021) (Gorsuch, J., dissenting)).

State Defendants disagree, strenuously, that comparability of risk is the appropriate analysis. Nevertheless, if that were the correct inquiry, then it must take into account the COVID-19 vaccination rule adopted by the Centers for Medicare and Medicaid Services (CMS). On November 5, 2021, CMS adopted an Interim Final Rule (CMS Rule) entitled "Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination." 86 Fed. Reg. 61,555 (proposed Nov. 5, 2021) (codified at 42 C.F.R. pts. 416, 418, 441, 460, 482-86, 491 & 494). The CMS Rule, which covers many of the same healthcare entities as Maine's Rule, requires

that those entities ensure that a broad swath of personnel within those facilities be vaccinated against COVID-19. *See, e.g.*, 42 C.F.R. §§ 482.42(g), 483.80(i) (2022) (mandating hospitals and long-term care facilities ensure staff, including employees, licensed practitioners, volunteers, and students, are vaccinated against COVID-19). The CMS Rule preempts any inconsistent state and local laws, including the scope of any applicable COVID-19 vaccine exemption. 86 Fed. Reg. at 61,613 ("[T]his IFC preempts the applicability of any State or local law providing for exemptions [to COVID-19 vaccination requirements] to the extent such law provides broader grounds for exemptions than provided for by Federal law and are inconsistent with this IFC.").

The scope of the medical exemption in the CMS Rule is narrower than the Statute. The Statute provides a medical exemption when a professional determines that "immunization against [COVID-19] may be medically inadvisable." 22 M.R.S.A. § 802(4-B)(A). In contrast, the CMS Rule provides an exemption from the requirement to obtain a COVID-19 vaccine only for "confirm[ed] recognized clinical contraindications to COVID-19 vaccines," 42 C.F.R. §§ 482.42(g)(3)(viii), 483.80(i)(3)(viii) (hospitals and long term care facilities), based on guidance from the United States Centers for Disease Control & Prevention (US CDC), 86 Fed. Reg. at 61,572. Because the Statute provides a broader medical exemption than the CMS Rule, the standard in the CMS Rule governs facilities covered by both rules. *See*

*Dr. T. v. Alexander-Scott*, 579 F. Supp. 3d 271, 284 (D.R.I. 2022); 86 Fed. Reg. at 61,613.

The US CDC recognized contraindications to vaccination are limited to known allergies, severe allergic reactions (anaphylaxis) to the COVID-19 vaccine, and cardiac conditions (TTS) occurring after the administration of a prior dose of a COVID-19 vaccine.[7]  According to US CDC, the rate of anaphylaxis to a COVID-19 vaccine is "5 cases per one million vaccine doses administered," and the rate of TTS after a COVID-19 vaccine is "approximately 4 cases per one million doses administered."[8]  Put another way, the approximately 11 or 12 persons that would suffer an adverse reaction to a COVID-19 vaccination based on Maine's entire population (not just persons subject to the Rule) is about the same number of Workers in this appeal.  The risks between medical and religious exemptions are therefore not comparable.

### 4.    The District Court correctly applied rational basis review.

Because the Rule and the Statute are neutral and generally applicable, the applicable standard of constitutional review is rational basis.  "Under the rational

---

[7]    Centers for Disease Control & Prevention, Summary Document for Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States (Dec. 6, 2022), *available at* https://www.cdc.gov/vaccines/covid-19/downloads/summary-interim-clinical-considerations.pdf.

[8]    Centers for Disease Control & Prevention, Selected Adverse Events Reported after COVID-19 Vaccination (last visited Feb. 21, 2023), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/adverse-events.html.

basis standard of review, 'legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.'" *Doherty v. Merck & Co.*, 892 F.3d 493, 500 (1st Cir. 2018) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). The burden of pleading facts to show that the Rule and Statute were not rationally related to a legitimate state interest was on the Workers. *See id.*

Here, the District Court correctly held that Maine's interests in the Rule and Statute were legitimate. Because "[s]temming the spread of COVID–19 is unquestionably a compelling interest," *Roman Cath. Diocese*, 141 S. Ct. at 67, the State's goals of stopping the spread of COVID-19 in certain facilities and protecting those unable to be vaccinated were unquestionably legitimate state interests. Add. 32. "Reducing the number of unvaccinated healthcare workers at [DHCFs] in Maine is rationally related to the [State]'s interests in limiting the spread of COVID-19, safeguarding Maine's healthcare capacity, and protecting the lives and health of Maine people." Add. 33. *Accord Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905) (upholding municipality's mandatory vaccination law based on its "real and substantial relation" to protecting public health).

The Workers claim that the District Court erred in accepting the State's interests because they are, allegedly, "overgeneralized" and too "abstract." Add. 32-34. This Court should reject this argument for two reasons. First, the Workers

35

never presented this argument to the District Court. "Appellants cannot raise an argument on appeal that was not 'squarely and timely raised in the trial court.'" *Thomas*, 542 F.3d at 949 (quoting *Iverson v. City of Boston*, 452 F.3d 94, 102 (1st Cir. 2006)). Neither the Workers' Amended Complaint nor their opposition to State Defendants' motion to dismiss articulated or insinuated this legal theory, *see Iverson*, 452 F.3d at 102, and this Court can and should reject this argument on this basis alone. Second, the Workers' argument is without merit. The cases cited in support are a non-controlling dissenting opinion, Br. 33 (citing *Does 1-3*, 142 S. Ct. at 20 (Gorsuch, J., dissenting)), and a decision that addresses the compelling interest inquiry in a RLUIPA case, Br. 33 (citing *Yellowbear*, 741 F.3d at 57). Neither case controls here. Finally, permitting a medical exemption, but a not a philosophical or religious exemption, to a required vaccination is no more a value judgment than the medical exception to Oregon's statute criminalizing possession of certain drugs—which the Supreme Court upheld under rational basis review in a Free Exercise challenge. *Smith*, 494 U.S. at 874. *See* Br. 33-34.

**C.    The Amended Complaint failed to allege facts sufficient to state a violation of the Workers' Free Exercise rights under strict scrutiny review.**

As shown above, both Maine laws in question are neutral and generally applicable and "need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."

*Lukumi*, 508 U.S. at 531.  But if strict scrutiny were to apply, then both laws would still stand up against Plaintiffs' free exercise challenge.

The question is "not whether the [state] has a compelling interest in enforcing its [rule] generally, but whether it has such an interest in denying an exception to" the Workers.  *Fulton*, 141 S. Ct. at 1881.  This has already explained: "if any healthcare workers providing such services, including the plaintiffs, were exempted from the" COVID-19 vaccination requirement "for non-health-related reasons, the most vulnerable Mainers would be threatened."  *Does 1-6*, 16 F.4th at 32.

Further, "[s]temming the spread of COVID–19 is unquestionably a compelling interest." *Roman Cath. Diocese*, 141 S. Ct. at 67.  Contrary to the Workers' argument, Br. 35, that interest remains compelling regardless of whether there is an ongoing pandemic. *Workman v. Mingo Cnty. Bd. of Educ.*, 419 F. App'x 348, 353-54 (4th Cir. 2011) (holding States have a clear, compelling interest in preventing the spread of communicable diseases even when there is no ongoing pandemic and those diseases are not prevalent), *cert. denied*, 565 U.S. 1036 (2011).

The Statute is also narrowly tailored to serve its objective.  Narrow tailoring requires the government to show that its policy is the "least restrictive means" of achieving its objective, *Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981), and that it "seriously undertook to address the problem with less intrusive tools readily available to it," *McCullen v. Coakley*, 573 U.S. 464, 494

(2014). To evaluate the requirement of narrow tailoring, "the court should ask whether the challenged regulation is the least restrictive means among available, effective alternatives." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004).

In the Workers' Amended Complaint, they asserted that "they are willing to wear facial coverings, submit to reasonable testing and reporting requirements, monitor symptoms, and otherwise comply with reasonable" health and safety requirements as alternatives to vaccination. A. 304, ¶¶ 65-66. Each of these options was considered by Maine CDC, but rejected. Maine CDC determined that symptom monitoring is insufficient because of asymptomatic transmission of the virus that causes COVID-19. A. 260, 262. Masks, facial coverings, and other personal protective equipment have been have used in DHCFs throughout the pandemic, but there still have been numerous outbreaks in covered facilities. A. 261, 269-70. Daily and periodic testing was also considered by Maine CDC, but rejected because of the contagiousness of the Delta variant. A. 262, 269-70. In sum, there were no less restrictive alternatives that would have been effective at achieving the State's goals. *Ashcroft*, 542 U.S. at 666.

Finally, other States' mandatory vaccination laws with medical exemptions, but not religious exemptions, have been upheld by two other circuits under strict scrutiny review. *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) ("mandatory vaccination as a condition for admission to school does not violate the

Free Exercise Clause"), *cert. denied*, 577 U.S. 822 (2015); *Workman*, 419 F. App'x at 352-55 (concluding West Virginia's mandatory vaccination law that allowed for only medical exemptions withstood strict scrutiny review).

## II.   The Workers failed to state a Fourteenth Amendment Equal Protection claim based on the unavailability of a religious exemption to Maine's COVID-19 vaccination requirement.

"The Equal Protection Clause does not forbid classifications." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "Equal protection of the laws means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances." *Walsh v. Massachusetts*, 618 F.2d 156, 158 (1st Cir. 1980) (cleaned up). "Unless state action burdens a suspect class or impinges upon a fundamental right," an equal protection claim is reviewed "for a rational relationship between the disparity of treatment and a legitimate government purpose." *Toledo v. Sanchez*, 454 F.3d 24, 33 (1st Cir. 2006).

Relevant here, "[w]here a plaintiff's First Amendment Free Exercise claim has failed, the Supreme Court has applied only rational basis scrutiny in its subsequent review of an equal protection fundamental right to religious free exercise claim based on the same facts." *Wirzburger*, 412 F.3d at 282 (citing *Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004)). Here, the District Court correctly held that because the Rule and Statute passed rational basis review under the First Amendment, they

39

also passed rational basis review under the Equal Protection Clause.  Add. 33-34.

The Workers argue that the District Court erred by dismissing their Equal Protection claim based on the insufficiency of their Free Exercise claim.  Br. 43-44.  They claim that this Court's decision in *Wirzburger* required the District Court to evaluate their Equal Protection Claim on its own terms.  Br. 43-44.  But the Workers misconstrue *Wirzberger*.  This Court explained that while there is no "blanket rule that where a Free Exercise Claim fails, all equal protection claims based on the same facts must also fail," the related equal protection claim must be "based on a theory" other than "the law or governmental action in question 'interferes with the fundamental constitutional right to the free exercise of religion.'"  *Wirzburger*, 412 F.3d at 282 n.5 (quoting *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974)).  The Workers' Amended Complaint alleges violations of the Equal Protection Clause based on the same facts and theories that they rest their Free Exercise claim: the alleged disparate treatment between the Workers, who would like to be exempt from the COVID-19 vaccination requirements based on their religious beliefs, and other healthcare workers claiming a medical exemption.  A. 297-98, 310, 314-15, 318-19, ¶¶ 35-38, 93-94, 114, 119-20, 142, 144-47.  In these circumstances, the District Court's treatment of the Workers' Equal Protection claim was appropriate because there has been no abridgment of the Workers' Free Exercise rights or any other fundamental right.  *See Wirzburger*, 412 F.3d at 283 ("apply[ing] rational basis

scrutiny to the fundamental right[]" to religious free exercise based claim).

The Workers nevertheless argue that the Rule and Statute create an impermissible classification based on religious belief, Br. 40-41, but neither the Rule nor the Statute distinguishes based on religious status. Instead, the Rule applies to all DHCFs, which must require their onsite employees to show proof of vaccination against COVID-19, unless the employee is exempt. A. 253, § 2(A)(7). The Statute permits all employees, regardless of their personal, philosophical, political, or religious beliefs, to claim an exception to that requirement if doing so "may be medically inadvisable." 22 M.R.S.A. § 802(4-B)(A). Even assuming that religious belief can be a suspect classification for purposes of equal protection, neither the Rule nor the Statute distinguishes on that basis. And, as with the Workers' Free Exercise claim, the Amended Complaint includes no plausible facts to support a theory that the Rule or Statute were adopted with a discriminatory purpose. Further, "a law, neutral on its face and serving ends otherwise within the power of government to pursue," is not invalid under the Equal Protection Clause simply because it may disproportionately affect an alleged suspect class. *Washington v. Davis*, 426 U.S. 229, 242 (1976).

Finally, the Workers claim that *Romer v. Evans*, 517 U.S. 620, 635 (1996), dictates the result in this case. Br. 42-43. But *Romer* involved an amendment to the Colorado state constitution that targeted, with express language, persons of

homosexual, lesbian, or bisexual orientation, *Romer*, 517 U.S. at 624; the Rule and the Statute do no such thing. Further, the Supreme Court applied a rational basis review to the law in question in *Romer,* and State Defendants have already demonstrated how the laws at issue are rationally related to a legitimate state interest. The Workers' Equal Protection claim was properly dismissed.

## CONCLUSION

For the reasons set forth above, State Defendants request that the Court affirm the District Court's dismissal of the Workers' Complaint.

Dated: February 23, 2023          Respectfully submitted,

AARON M. FREY
Attorney General

THOMAS A. KNOWLTON
Deputy Attorney General
Chief, Litigation Division
thomas.a.knowlton@maine.gov

/s/ Kimberly L. Patwardhan
KIMBERLY L. PATWARDHAN
Assistant Attorney General
kimberly.patwardhan@maine.gov

Office of the Attorney General
6 State House Station
Augusta ME  04333-0006
Tel.  (207) 626-8800
Fax (207) 287-3145

Attorneys for State Defendants-Appellees

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6). I further certify that all text in this opposition brief is in proportionally spaced Times New Roman Font and is 14 points in size. I further certify that, according to the word count function of the word-processing software used to prepare this opposition brief (Microsoft Word 365), this brief contains 10,095 words.

/s/ Kimberly L. Patwardhan
KIMBERLY L. PATWARDHAN
Assistant Attorney General
207-626-8570
kimberly.patwardhan@maine.gov

Office of the Attorney General
6 State House Station
Augusta, Maine 04333-0006

Attorney for State Defendants-Appellees

## CERTIFICATE OF SERVICE

I, Kimberly L. Patwardhan, hereby certify that on February 23, 2023, I electronically filed the State Defendants'-Appellees' Principal Brief with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Kimberly L. Patwardhan
KIMBERLY L. PATWARDHAN
Assistant Attorney General
207-626-8570
kimberly.patwardhan@maine.gov

Office of the Attorney General
6 State House Station
Augusta, Maine 04333-0006

Attorney for State Defendants-Appellees