No. 22-1710

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

ALICIA LOWE, JENNIFER BARBALIAS, DEBRA CHALMERS, NICOLE GIROUX, NATALIE SALAVARIA, ADAM JONES, GARTH BERENYI,

*Plaintiffs-Appellants*,

v.

JANET T. MILLS, in her official capacity as Governor of the State of Maine, JEANNE M. LAMBREW, in her official capacity as Commissioner of the Maine Department of Health and Human Services, NANCY BEARDSLEY, in her official capacity as Acting Director for the Maine Center for Disease Control and Prevention, MAINEHEALTH, GENESIS HEALTHCARE OF MAINE, LLC, GENESIS HEALTHCARE, LLC, NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER, MAINEGENERAL HEALTH,

*Defendants-Appellees*.

On Appeal from the United States District Court for the District of Maine,
No. 1:21-cv-00242-JDL, Hon. Jon D. Levy

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

Mathew D. Staver, *Counsel of Record*
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@lc.org – hmihet@lc.org
rgannam@lc.org – dschmid@lc.org
*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………i

TABLE OF AUTHORITIES……………………………………………………iii

INTRODUCTION……………………………………………………………….1

ARGUMENT…………………………………………………………………….3

I.      STATE DEFENDANTS' DISPARATE TREATMENT OF RELIGIOUS AND NONRELIGIOUS MEDICAL EXEMPTIONS FROM COMPULSORY COVID-19 VACCINATION VIOLATES THE FREE EXERCISE CLAUSE……………………………………..3

      A.    State Defendants' Contention That Plaintiffs Did Not Plead That The Vaccine Mandate Compelled Them To Act Contrary To Their Religious Beliefs Is Demonstrably Fallacious…………………3

      B.    That Plaintiffs Did Not Succumb To State Defendants' Compulsory Vaccine Mandate Does Not Diminish The First Amendment Violation…………………………………………...5

      C.    The Timing Of State Defendants' Revocation Of Protections For Religious Accommodations Is Irrelevant To The First Amendment Violation…………………………………………...7

      D.    State Defendants' Reliance On Delegation Of Authority To Approve A Nonreligious Medical Exemption Does Not Diminish The Violation Of The First Amendment By The State's Creating A System Of Discriminatory Individualized Exemptions……………10

      E.    State Defendants' Reliance On A Numbers Game Ignores The Salient Inquiry Of Neutrality And General Applicability……………12

II.    PLAINTIFFS PLAINLY ALLEGED THAT PROVIDER DEFENDANTS' REFUSALS TO PROVIDE RELIGIOUS ACCOMMODATION VIOLATES TITLE VII……………………………13

A.    Provider Defendants' Conflation Of Exemption And Accommodation Ignores What Plaintiffs Requested In The Accommodation Applications And Pleaded In Their Complaint.......13

B.    At Minimum, State Defendants' Statements Below Prove Plaintiffs' Stated A Claim That Provider Defendants' Refusal To Provide A Religious Accommodation Violates Title VII..............16

  1.    State Defendants stated below that nothing in the Mandate prohibited Provider Defendants from offering religious Accommodations……………………………………………..16

  2.    Under State Defendants' construction of their own Mandate, Provider Defendants' refusals to provide religious accommodations violates Title VII………………….20

  3.    Provider Defendants concede, for the first time on appeal, that the Vaccine Mandate did not prohibit offering Plaintiffs religious accommodations…………………………22

C.    Provider Defendants' Assertions of Undue Hardship Required the District Court to Impermissibly Adjudicate Matters Outside Plaintiffs' Complaint…………………………………………...24

  1.    Plaintiffs' Complaint satisfied the plausibility prism necessary for a Title VII claim………………………...24

  2.    Provider Defendants' assertions of undue hardship require determinations outside of the allegations of Plaintiffs' Complaint………………………………………………….25

CONCLUSION……………………………………………………...27

# TABLE OF AUTHORITIES

## CASES

*Air Force Officer v.* Austin, 588 F. Supp. 3d 1338, (M.D. Ga. 2022)……………..12

*Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50 (1st Cir. 2006)…………..18, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………….26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………………..20

*Blackstone Realty LLC v. FDIC*, 244 F.3d 193 (1st Cir. 2001)……………………24

*Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-3360-JMG,
2023 WL 362392 (E.D. Penn. Jan. 23, 2023)………………………………………...14

*Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 945 (5th Cir. 2001)……………..14

*Callahan v. Woods*, 658 F.2d 679 (9th Cir. 1981)…………………………………..8

*Carson v. Makin*, 142 S. Ct. 1987 (2022)……………………………...………6, 7, 9

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993)………………………………………………...……………10, 11

*Dr. A v. Hochul*, 142 S. Ct. 552 (2021)……………………………………………12

*Espinoza v. Montana Dep't of Rev.*, 140 S. Ct. 2246 (2020)………………………..6

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021)…………………..……..8, 11

*Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15 (1st Cir. 2014)……24, 25

*Garcia v. Does*, 779 F.3d 84 (2d Cir. 2015)………………………………………27

*Gooley v. Mobile Oil Corp.*, 851 F.2d 513 (1st Cir. 1988)………………………..18

*Horvath v. City of Leander*, 946 F.3d 787 (5th Cir. 2020)…………………………14

*Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136 (1987)………….8

*Kennedy v. Bremerton Sch. Dist.*, 143 S. Ct. 2407 (2022)…………………………10

*Rodriguez-Reyes v. Monlina-Rodriguez*, 711, F.3d 49 (1st Cir. 2014)…….24, 25, 27

*Rodriguez-Vives v. P.R. Firefighters Corps*, 743 F.3d 278 (1st Cir. 2014)………..24

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020)……………13

*Sanchez-Rodriguez v. AT&T Mobility Puerto Rico, Inc.*,
673 F.3d 1 (1st Cir. 2012)………………………………………………………….25

*Sewell v. Bernardin*, 795 F.3d 337 (2d Cir. 2015)…………………………………27

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)……………………………..20

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021)……………………………………..12

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
137 S. Ct. 2012 (2017)………………………………………………………6, 7

*Wisconsin v. Yoder*, 406 U.S. 205 (1972)………………………………………...5

## OTHER

5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*
§ 1356 (1990)……………………………………………………………………...19

## INTRODUCTION

The district court's dismissal of Plaintiffs' well-pleaded Complaint was plainly in error. The district court ignored the well-pleaded allegations of Plaintiffs' Complaint, resolved disputed factual questions against Plaintiffs, and adjudicated an affirmative defense on the basis of clearly contested allegations. Therefore, its decision exceeded its authority under Rule 12(b)(6). Plaintiffs' well-pleaded allegations plainly crossed the pleading threshold and entitled them to discovery on their claims. The arguments presented by Defendants to this Court do not diminish the error of the district court's conclusions.

State Defendants' disparate treatment of religious and nonreligious medical exemptions from compulsory COVID-19 vaccination violates the Free Exercise Clause. State Defendants' contention that Plaintiffs failed to allege that the Vaccine Mandate compelled them to act contrary to their religious beliefs is false. Plaintiffs' well-pleaded allegations plainly demonstrate such compulsion, and the fact that Plaintiffs did not succumb to State Defendants' Mandate does not diminish the First Amendment violation. Indeed, the First Amendment protects Plaintiffs from violating their convictions, and a plausible claim under the First Amendment is not contingent upon a plaintiff's first violating his religious convictions to unlock the doors to the federal courthouse. Also, contrary to the district court's conclusions, the timing of State Defendants' revocation of protections for religious accommodations

is irrelevant to the First Amendment violation. State Defendants' reliance on delegation of authority to approve a nonreligious medical exemption does not diminish the fact that the State created the system for individualized exemptions in violation of the First Amendment. Finally, State Defendants' reliance on a numbers game ignores the salient inquiry of neutrality and general applicability under the First Amendment.

Provider Defendants' presentations to the Court fare no better. Plaintiffs plainly alleged that Provider Defendants' refusal to provide religious accommodations violates of Title VII. Provider Defendants erroneously conflate Plaintiffs' requested exemption and accommodation and ignore what Plaintiffs requested in their accommodation applications and pleaded in their Complaint. At minimum, State Defendants' statements below demonstrate that Plaintiffs stated a claim that Provider Defendants' refusal to provide religious accommodations violates Title VII because State Defendants conceded below that nothing in the mandate prohibited Provider Defendants from offering Plaintiffs the requested accommodation. Under State Defendants' construction of their own mandate, Provider Defendants' refusal to provide a religious accommodation violates Title VII. And, like State Defendants below, Provider Defendants concede, for the first time on appeal, that the Vaccine Mandate did not prohibit offering Plaintiffs a religious accommodation. That concession is fatal to Provider Defendants' refusal

to accommodate Plaintiffs and demonstrates the error of the district court's dismissal. Finally, the district court impermissibly adjudicated Provider Defendants' assertions of undue hardship by resort to matters outside Plaintiffs' complaint. Plaintiffs satisfied the plausibility prism necessary for a Title VII claim, and the district court's dismissal of their Title VII claims was in error.

This Court should reverse the district court and permit Plaintiffs to adduce facts in discovery to prove the merits of their claims.

## ARGUMENT

I. **STATE DEFENDANTS' DISPARATE TREATMENT OF RELIGIOUS AND NONRELIGIOUS MEDICAL EXEMPTIONS FROM COMPULSORY COVID-19 VACCINATION VIOLATES THE FREE EXERCISE CLAUSE.**

A. **State Defendants' Contention That Plaintiffs Did Not Plead That the Vaccine Mandate Compelled Them to Act Contrary to Their Religious Beliefs Is Demonstrably False.**

State Defendants contend that Plaintiffs cannot state a claim under the Free Exercise Clause because they did not plead that the Vaccine Mandate had a coercive or compulsory effect on Plaintiffs' religious beliefs and did not present such claims to the district court. (State Defendants'-Appellees' Principal Brief ("State Brief") 16–17.) This is plainly incorrect. A simple review of Plaintiffs' Complaint and numerous arguments to the district court below reveal the folly of State Defendants' assertions.

First, in the first pleading presented to the district court below, Plaintiffs alleged that the Vaccine Mandate coerced them into the choice between accepting a COVID-19 vaccine and being terminated. (*See* dkt. 1, PageID 4–5 ("Plaintiffs have been given a deadline to become vaccinated by October 1, 2021, forcing them to accept a vaccine injection by September 17, 2021 at the latest. If Plaintiffs do not comply with the vaccine mandate, they will be terminated and deprived of their ability to feed their families. No American should be faced with this unconscionable choice, especially the healthcare heroes who have served us admirably for the entire duration of COVID-19.").) And, in the operative complaint at issue here, Plaintiffs plainly alleged that the Vaccine Mandate coerced and compelled them to act in contradiction to their sincerely held religious beliefs. (App. 314, ¶ 115 ("The Governor's COVID-19 Vaccine Mandate, on its face and as applied, impermissibly burdens Plaintiffs' sincerely held religious beliefs, compels Plaintiffs to either change those beliefs or act in contradiction to them, and forces Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and the State's imposed value system."); App. 315, ¶ 116 ("The Governor's COVID-19 Vaccine Mandate, on its face and as applied, places Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs."); *id.*, ¶ 117 ("The Governor's COVID-19 Vaccine Mandate, on its face and as applied, puts substantial pressure on Plaintiffs to violate

4

their sincerely held religious beliefs or face loss of their ability to feed their families.").)

In response to the motions to dismiss below, Plaintiffs likewise noted that State Defendants' Vaccine Mandate compelled them to choose between their jobs and compliance with their sincerely held religious beliefs. (*See* dkt. 117, PageID 1342, 1344, 1349, 1351 (noting, *inter alia*, State Defendants' mandate reflects a "take the jab, or take a hike policy").)

Forcing Plaintiffs to chose between their jobs and their religious beliefs is perforce coercion in violation of the Free Exercise Clause. Indeed, a compulsory vaccination law's impact on Plaintiffs' free exercise rights is "inescapable" because the Vaccine Mandate "affirmatively compels them . . . to perform acts undeniably at odds with fundamental tenets of their religious beliefs." *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972). Plaintiffs have plainly alleged that State Defendants' Vaccine Mandate compels them to act contrary to their sincerely held religious beliefs in order to maintain employment in Maine. (App. 314–315, ¶¶ 115–117.)

### B. That Plaintiffs Did Not Succumb to State Defendants' Compulsory Vaccine Mandate Does Not Diminish the First Amendment Violation.

To add insult to the constitutional injury inflicted by the Vaccine Mandate, State Defendants now contend there was no coercion or First Amendment violation because Plaintiffs never "acted in a way contrary to the demands of their religious

beliefs." (State Br. 17.) In essence, State Defendants' contention is that Plaintiffs' refusal to succumb to State Defendants' unconstitutional demands shields them from any liability. Balderdash.

As Maine should well know, "the Free Exercise Clause of the First Amendment protects against indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Carson v. Makin*, 142 S. Ct. 1987, 1996 (2022) (cleaned up) (striking down Maine's discriminatory educational tuition assistance program). Indeed, "as the Court put it more than 50 years ago, it is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2022 (2017) (cleaned up); *Espinoza v. Montana Dep't of Rev.*, 140 S. Ct. 2246, 2256 (2020) (same).

State Defendants seem to suggest that because Plaintiffs were "free" to refuse COVID-19 vaccination and comply with their sincerely held religious beliefs without some State penalty, there was no First Amendment violation. (State Br. 17–18.) This, again, misses the mark. "That the State had not criminalized the way in which [Plaintiffs] worshipped or told [Plaintiffs] that [they] cannot subscribe to a certain view of the Gospel" is irrelevant because "the State's discriminatory policy was odious to our Constitution all the same." *Espinoza*, 140 S. Ct. at 2255 (cleaned up). Thus, "while it was true that [Plaintiffs] remained free to continue" exercising

6

their religious beliefs, they "could enjoy that freedom only at the cost of automatic and absolute exclusion from the benefits of [employment] for which [Plaintiffs were] otherwise fully qualified." *Carson*, 142 S. Ct. at 1996 (cleaned up) (quoting *Trinity Lutheran*, 137 S. Ct. at 2022). The First Amendment violation was inherent in the compulsory choice placed upon Plaintiffs here, not their refusal to act in contradiction to their religious consciences.

State Defendants' indirect coercion and penalties are clear: take the jab, or take a hike. Plaintiffs' Complaint alleged that they were "forced to choose between their jobs and their sincerely held religious beliefs," (App. 289, ¶ 5), and that they were all "terminated from their positions for failure to accept or receive a COVID-19 vaccine that violates their sincerely held religious beliefs." (*Id.*; *see also* App. 291–294, ¶¶ 10–16.) That is plainly sufficient to state a plausible claim under the First Amendment. The district court's dismissal of their Complaint was in error and must be reversed.

C. **The Timing Of State Defendants' Revocation Of Protections For Religious Accommodations Is Irrelevant To The First Amendment Violation.**

State Defendants contend that the Vaccine Mandate was merely the result of a legislative change in 2020 with a subsequent regulatory change in April 2021 that revoked religious accommodations from compulsory vaccination. (State Br. 19.) Their argument appears to be that the timing of the revocation of protections for

religious objectors eliminates the constitutional infirmity of the Vaccine Mandate. (State Br. 19 (noting that the district court looked "to the timing and circumstances of the amendment" to find neutrality (citing Add. 27)).) In essence, State Defendants adopt the district court's 'time heals all wounds' rationale. This is incorrect.

Without doubt, the recency of a legislative enactment or government regulation restricting the free exercise of religion may be relevant to the neutrality determination. *See, e.g.*, *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1875–79 (2021) (noting that the government's recent adoption of a nondiscrimination provision effectively nullifying a contractual relationship that existed for over 50 years warranted a finding of non-neutrality). That said, the "timing" of a substantial burden on religious beliefs "is immaterial to our determination that [a plaintiff's] free exercise rights have been burdened; the salient inquiry under the Free Exercise Clause is the burden involved." *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144 (1987). Indeed, the relevant question is whether the religious objector maintained a religious objection at the time it was asserted. *See, e.g.*, *Callahan v. Woods*, 658 F.2d 679, 687 (9th Cir. 1981) ("So long as one's faith is religiously based at the time it is asserted, it should not matter" when the burden arose).

Again, the Maine legislature's history with violations of the Free Exercise Clause is particularly instructive on this erroneous 'time heals all wounds' theory.

Last year, the Supreme Court was confronted with a challenge to Maine's tuition assistance program. *Carson*, 142 S. Ct. at 1996. Under the program, "[p]rior to 1981, parents could . . . direct the tuition assistance payments to religious schools," and "in the 1979–1980 school year, over 200 Maine students opted to attend such schools through the tuition assistance program." *Id.* at 1994. Yet, *in 1981*, Maine's legislature adopted a statute that prohibited tuition assistance payments from being directed to religious or sectarian schools. *Id.* The plaintiff parents challenged the tuition assistance program in 2018—*37 years* after enactment of the legislative change. *Id.* at 1995. And, *41 years* after its enactment, in 2022, the Supreme Court held that the discriminatory treatment of religion was not neutral and violated the First Amendment Free Exercise Clause. *Id.* at 1997 (finding that the tuition assistance statute "specifically carved out private religious schools from those eligible to receive such funds").

Thus, that the statute and rule were adopted prior to the Vaccine Mandate is irrelevant to the question of neutrality. Contrary to the district court's and State Defendants' contentions (Add. 26; State Br. 19), that the relevant revocation of protection for religious beliefs occurred two years prior to the ripening of Plaintiffs' First Amendment injury by adoption of the Vaccine Mandate does not matter for neutrality purposes. If the neutrality inquiry applies 41 years after a statutory enactment, *Carson*, 142 S. Ct. at 1997, then it applies after two years. Plaintiffs'

Complaint plainly alleged that the Vaccine Mandate was not neutral. (App. 297, ¶¶ 37–39; App. 315, ¶¶ 118–19.) That State Defendants' failure to comply with the First Amendment's neutrality and general applicability requirements predated Plaintiffs' claims is irrelevant. Plaintiffs stated a current claim, and the district court's dismissal was in error.

### D. State Defendants' Reliance On Delegation Of Authority To Approve A Nonreligious Medical Exemption Does Not Diminish The Violation Of The First Amendment By The State's Creating A System Of Discriminatory Individualized Exemptions.

State Defendants contend that the Vaccine Mandate's failure to accommodate religious objectors while permitting medical exemptions does not create a system of individualized exemptions because the State does not determine who qualifies for a medical exemption. (State Br. 23 ("Unlike in *Fulton* and *Sherbert*, the Statute vests discretion regarding medical exemptions with healthcare providers, not State officials.") That the State, itself, does not grant the exemptions in form does not diminish the unconstitutional substance of the mandate. "In circumstances in which individualized exemptions from a general requirement are available, the government may not refuse to extend *that system* to cases of religious hardship without compelling reason." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 538 (1993) (cleaned up) (emphasis added). *See also Kennedy v. Bremerton Sch. Dist.*, 143 S. Ct. 2407, 2422 (2022) ("A government policy will fail the general

applicability requirement if it . . . provides a *mechanism* for individualized exemptions." (emphasis added)).

The constitutional flaw is not, as State Defendants suggest, contingent on State Defendants' having discretion to grant or deny the exemption, but in State Defendants' creation of the *system* or *mechanism* for individualized exemptions, regardless of who makes the decision to employ that system. But, even if it was, State Defendants exercised their discretion to grant a system for individualized exemptions for a certain class of individuals (medical exemptions) while denying that same system to religious objectors. Indeed, State Defendants even concede this fact, as they must. (State Br. 24 (noting "*Maine's framework for providing* medical exemptions to mandatory vaccination requirements . . . .") (emphasis added).) And, that exercise of discretion to preclude Plaintiffs from accessing the system for individualized exemptions represents the constitutional flaw and renders the mandate not generally applicable. *See Lukumi*, 508 U.S. at 537; *Fulton*, 141 S. Ct. at 1877. Plaintiffs stated a plausible claim that the Vaccine Mandate was not neutral or generally applicable.

Plaintiffs plainly alleged that State Defendants' system and the refusal to extend it to Plaintiffs and other religious objectors to the Vaccine Mandate renders it not generally applicable. (App. 315, ¶ 120; *see also* App. 296–97, ¶¶ 31–39 (noting State Defendants' creation of a system for certain exemptions based upon medical

11

reasons while explicitly prohibiting extension of that system to religious objectors such as Plaintiffs).) The district court's determination that such a system was generally applicable was in error.

### E. State Defendants' Reliance On A Numbers Game Ignores The Salient Inquiry Of Neutrality And General Applicability.

State Defendants contend that "a single, objective exemption does not render the Statute a system of individualized exemptions that is not generally applicable." (State Br. 24.) State Defendants' contention fails to recognize that the First Amendment's requirement of neutrality and general applicability cannot be reduced to a mathematical formula. Indeed, "this Court's general applicability test doesn't turn on that kind of numbers game." *Dr. A v. Hochul*, 142 S. Ct. 552, 556 (2021) (Gorsuch, J., dissenting). Put simply, in determining whether a law is generally applicable because of its creation of some exemption, "all it takes is one." *Air Force Officer v. Austin*, 588 F. Supp. 3d 1338, 1355 (M.D. Ga. 2022) (cleaned up). The reason for this is simple: "Government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (cleaned up).

Here, Plaintiffs alleged, and State Defendants admit, that the Vaccine Mandate treats religious objectors less favorably than nonreligious, medical exemptions. (App. 315, ¶ 120; *see also* App. 296–97, ¶¶ 31–39.) Because an

exemption exists for nonreligious reasons but not for religious reasons, it fails neutrality and general applicability. "[O]nce a State creates a favored class of [exemptions], as [Maine] has done in this case, the State must justify why [religious exemptions] are excluded from that favored class." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 73 (2020) (Kavanaugh, J., concurring). The district court erred in finding that Plaintiffs had not stated a claim under the Free Exercise Clause, and this Court should reverse.

## II.     PLAINTIFFS PLAINLY ALLEGED THAT PROVIDER DEFENDANTS' REFUSALS TO PROVIDE RELIGIOUS ACCOMMODATIONS VIOLATE TITLE VII.

### A.     Provider Defendants' Conflation of Exemption and Accommodation Ignores What Plaintiffs Requested in the Accommodation Applications and Pleaded in Their Complaint.

Provider Defendants combat Plaintiffs' well-pleaded allegations of a Title VII violation with a constant refrain that Plaintiffs sought merely an exemption rather than an accommodation. (Defendant-Appellee Northern Light Eastern Maine Medical Center's Brief ("Northern Light Brief") 18; Brief of Defendants-Appellees MaineHealth, Genesis Healthcare of Maine, LLC, Genesis Healthcare, LLC, and MaineGeneral Health ("MaineHealth Brief") 13–14.) What Northern Light terms "the singular accommodation sought here" (Northern Light Br. 18) demonstrates that Provider Defendants conflate the exemption and accommodation concepts as a single request that purportedly cannot be offered under State Defendants' Vaccine

Mandate. As discussed in Section II.B, *infra*, there is an unquestionable dispute as to whether Plaintiffs' requested accommodation is prohibited, but that is a separate issue. What Provider Defendants ignore in their conflation of the exemption and accommodation concepts is that the accommodation Plaintiffs requested, and which is required by Title VII, is necessarily preceded by the granting of an exemption. If Plaintiffs are required to accept or receive a COVID-19 vaccination against their sincerely held religious beliefs, then no accommodation is necessary.

Likewise, providing a reasonable accommodation to Plaintiffs' sincerely held religious beliefs necessarily dictates that the accommodation be in lieu of vaccination—as a result of an exemption. *See, e.g.*, *Horvath v. City of Leander*, 946 F.3d 787, 790-792 (5th Cir. 2020) (noting that the employee was first granted an exemption to the flu vaccine requirement and then the accommodation offered was a transfer to a different position); *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 945, 501 (5th Cir. 2001) (noting that the employee was offered an exemption from the employment requirement and then offered a reasonable accommodation after being excused from the requirement); *Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-3360-JMG, 2023 WL 362392, *7 (E.D. Penn. Jan. 23, 2023) (noting that the employee was first given the exemption from a requirement to accept a Covid-19 vaccination and the accommodation was that she submit "to regular COVID-19 screening tests *in lieu of vaccination*." (emphasis added)).

14

Further, Provider Defendants' conflation ignores the well-pleaded allegations of Plaintiffs' Complaint. Plaintiffs offered, and alleged that they were ready, willing, and able to comply with all reasonable health and safety requirements to facilitate their religious exemption and accommodation from the Vaccine Mandate. (App. 304, ¶ 65.) Plaintiffs informed their respective employers that they were willing to wear facial coverings, submit to reasonable testing and reporting requirements, monitor symptoms, and otherwise comply with all reasonable conditions that were good enough to permit them to do their jobs for the 18 months preceding the Mandate. (App. 304, ¶ 66.) In fact, in the months preceding the Vaccine Mandate and their termination, the State said Plaintiffs were heroes because of their willingness to abide by the same conditions and requirements that Plaintiffs offered as bases to permit their reasonable accommodations. (App. 304, ¶ 67.) State Defendants even publicly stated that some of Plaintiffs' requested accommodations—*e.g.*, face coverings—are one of the most effective ways to prevent COVID-19. (App. 304, ¶ 68.) In its Face Covering FAQs page, State Defendants noted: "wearing a face covering has been proven to be one of the most significant, effective, and easiest ways to reduce the spread of COVID-19." (*Id.*)

Additionally, State Defendants still recommend that vaccinated individuals wear a mask in public settings. (App. 305, ¶ 69.) And the reason for this is simple: "[a] preliminary study has shown that in the case of a breakthrough infection, the

Delta variant is able to grow in the noses of vaccinated people *to the same degree as if they were not vaccinated at all*. (*Id.* (emphasis added).) Masking and testing protocols remained sufficient to prevent the spread of COVID-19 among healthcare workers, and represented a reasonable alternative to vaccination as an accommodation of Plaintiffs' sincerely held religious beliefs. (App. 305, ¶ 70.) Plaintiffs merely requested a reasonable accommodation that could have permitted them to continue in their positions while maintaining their religious convictions. Title VII requires that Provider Defendants provide such accommodations, and Plaintiffs' Complaint plainly states a claim that such accommodations were available. The district court erred in dismissing their claims.

> **B.    At Minimum, State Defendants' Statements Below Prove Plaintiffs' Stated A Claim That Provider Defendants' Refusal To Provide A Religious Accommodation Violates Title Vii.**

Provider Defendants claim that the district court was correct in dismissing Plaintiffs' Title VII claims because granting Plaintiffs' requested accommodation would have violated the Vaccine Mandate and thus imposed an undue hardship on Provider Defendants. (Northern Light Br. 14; MaineHealth Br. 12–13.) The district court's dismissal on this basis is reversible error because it directly conflicts with the allegations of Plaintiffs' Complaint, ignores the statements of State Defendants below, and necessarily demonstrates that the Vaccine Mandate contradicts the requirements of Title VII.

16

### 1. State Defendants stated below that nothing in the Mandate prohibited Provider Defendants from offering religious accommodations.

Provider Defendants maintain that granting Plaintiffs' requested accommodations would violate state law and thus impose an undue burden. (Northern Light Br. 16; MaineHealth Br. 13.) The district court dismissed Plaintiffs' Complaint on this same ground. (Add. 22.) But, both the district court's determinations and Provider Defendants' assertions conflict with what State Defendants stated below. First, State Defendants explicitly claimed that the Vaccine Mandate did not prohibit the granting of accommodations. (*See* dkt. 109, PageID 1250–51 ("[T]he Department published guidance explaining that the Rule does <u>not</u> prohibit employers from providing accommodations under Title VII."); *see also* Plaintiffs-Appellants' Opening Br. 52.) And, State Defendants made it even more explicit by noting that their statement applied to religious accommodations: "The Rule does not prohibit employers from providing accommodations for employees' sincerely held religious beliefs, observances, or practices that may otherwise be required under Title VII." (Dkt. 109, PageID 1250–51.)

The district court dismissed Plaintiffs' Complaint on the basis that these statements from State Defendants did not demonstrate a factual inconsistency or conflict with the allegations of Plaintiffs' Complaint. (Add. 22.) This is reversible

error for two reasons: it impermissibly (1) draws inferences in Defendants' favor and (2) resolves contested facts in Defendants' favor.

First, under Rule 12(b)(6), all well-pleaded allegations of Plaintiffs' Complaint must be accepted as true and all inferences drawn in Plaintiffs' favor. *Gooley v. Mobile Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). When presented with State Defendants' own admissions, the district court was *required* to draw the reasonable inference in Plaintiffs' favor. *Id.* The district court stated that "[t]he amended complaint does not allege that any of the Defendants have asserted that all religious accommodations, apart from the exemption the Plaintiffs desire, are unavailable." (Add. 21.) Yet, Plaintiffs' Complaint certainly alleges that neither exemptions nor accommodations are available for religious objectors. (*See, e.g.*, App. 307, ¶ 80 ("Northern Light EMMC responded to Plaintiff Barbalias, denying her request and stating that the Governor's COVID-19 Vaccine Mandate does not permit exemptions *or accommodations* for sincerely held religious beliefs." (emphasis added)); App. 308, ¶ 83 (noting that no religious accommodations were available under the Mandate).) Thus, the district court ignored the well-pleaded allegations of Plaintiffs' Complaint and failed to "view the facts contained in the pleadings in the light most flattering to the nonmovants (here, the plaintiffs)." *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54 (1st Cir. 2006). That error must be reversed.

18

Second, even assuming that the district court did not draw inferences in Defendants' favor, which it did, there is no question that the district court committed reversible error in also resolving contested facts in Defendants' favor. Rule 12(b)(6) "does not allow for any resolution of contested facts." *Aponte-Torres*, 445 F.3d at 54. *See also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990) (noting that a motion to dismiss under Rule 12(b)(6) does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses). Plaintiffs' Complaint alleged that Provider Defendants stated to Plaintiffs that no exemption or accommodation for religious beliefs was available under the Vaccine Mandate. (App. 309, ¶ 86 ("The responses from Defendants MaineHealth, Genesis Healthcare, Northern Light EMMC, and MaineGeneral Health have been virtually identical for all other Plaintiffs as well, indicating that the various Defendants were not permitted by the Governor's COVID-19 Vaccine Mandate to allow for (or even consider) *an exemption and accommodation* for sincerely held religious beliefs." (emphasis added)).) Provider Defendants contended below, as here, that the Vaccine Mandate prohibited them from offering Plaintiffs an accommodation for their sincerely held religious beliefs. (Northern Light Br. 16; MaineHealth Br. 13.) State Defendants stated below that no such prohibition exists. (Dkt. 109, PageID 1250–51.) And, the district court acknowledged State Defendants' concessions below. (Add. 21.) All of those

19

statements cannot be true, and resolving the contested nature of this issue in Defendants' favor is plainly erroneous.

Plaintiffs sufficiently pleaded a claim that entitled them to probe their claims in discovery. The pleading standard "simply call[s] for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful actions]," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), and the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The district court short circuited that process by resolving contested facts in Defendants' favor at the Rule 12(b)(6) stage, and that dismissal must be reversed.

### 2. Under State Defendants' construction of their own Mandate, Provider Defendants' refusals to provide religious accommodations violate Title VII.

Leaving aside the disputed facts that the district court impermissibly revolved against the well-pleaded allegations of Plaintiffs' Complaint, State Defendants' construction of their own mandate demonstrates that Provider Defendants' refusal to accommodate Plaintiffs' sincerely held religious beliefs directly conflicts with Title VII's requirements. Again, State Defendants explicitly claimed below that the Vaccine Mandate did not prohibit the granting of accommodations for religious objectors. (*See* dkt. 109, PageID 1250–51 ("[T]he Department published guidance explaining that the Rule does <u>not</u> prohibit employers from providing

20

accommodations under Title VII."); *see also* Opening Br. 52.) And State Defendants explicitly applied that construction to religious objectors below: "The Rule does not prohibit employers from providing accommodations for employees' sincerely held religious beliefs, observances, or practices that may otherwise be required under Title VII." (Dkt. 109, PageID 1250–51.)

Under that construction, the district court was required to infer in Plaintiffs' favor what accommodations may have been available under the Vaccine Mandate. Plaintiffs alleged that Provider Defendants' sole basis for refusing to extend reasonable accommodations to Plaintiffs' sincerely held religious beliefs was the Vaccine Mandate. (App. 305–309, ¶¶ 72–86.) For example, MaineHealth stated to Plaintiff Lowe that because of the Vaccine Mandate, "we are no longer able to consider religious exemptions for those who work in the state of Maine." (App., 306, ¶ 74.) To make matters clear, MaineHealth stated that because of the Vaccine Mandate, "we are not able to grant a request for a religious exemption from the state mandated vaccine." (App. 307, ¶ 77.) Additionally, Plaintiffs Barbalias was informed that "the Governor's COVID-19 Vaccine Mandate does not permit exemptions or accommodations for sincerely held religious beliefs." (App. 307, ¶ 80.)

Provider Defendants' *sole* basis for refusing the religious accommodations to Plaintiffs was State Defendants' Mandate. *Nothing else*. Yet, State Defendants'

concessions give rise to a reasonable inference in Plaintiffs' favor that Provider Defendants' refusal to accommodate Plaintiffs' religious beliefs was, in fact, not prohibited by the Vaccine Mandate. Thus, the district court's determination that Provider Defendants would suffer undue hardship because accommodating Plaintiffs would violate the Mandate necessarily and impermissibly ignored the reasonable inference the court was required to draw in Plaintiffs' favor.  (Add. 21.) It was reversible error for the district court to conclude Plaintiffs have stated no plausible Title VII claim based on a resolution of contested facts against the well-pleaded allegations of the Complaint and all reasonable inferences to be drawn therefrom.

### 3. Provider Defendants concede, for the first time on appeal, that the Vaccine Mandate did not prohibit offering Plaintiffs religious accommodations.

Provider Defendants contend that, based on Plaintiffs' Complaint, the district court could reach only one conclusion as to undue hardship in this matter. (Northern Light Br. 22; MaineHealth Br. 21-22.) This is incorrect. Here again, State Defendants' concessions below demonstrate that the Vaccine Mandate did not prohibit the granting of accommodations for religious objectors. (*See* dkt. 109, PageID 1250–51 ("[T]he Department published guidance explaining that the Rule does <u>not</u> prohibit employers from providing accommodations under Title VII." (emphasis original)).) And State Defendants explicitly applied that construction to

religious objectors below: "The Rule does not prohibit employers from providing accommodations for employees' sincerely held religious beliefs, observances, or practices that may otherwise be required under Title VII." (Dkt. 109, PageID 1250–51.)

Provider Defendants nevertheless stated to Plaintiffs that the Vaccine Mandate prohibited them from accommodating Plaintiffs' sincerely held religious beliefs. (App. 305–309, ¶¶ 72–86.) Yet, on appeal, Provider Defendants now concede that such a prohibition does not exist. "Appellants' assertion that Providers are not prohibited from providing accommodations for sincerely held religious beliefs *is of course accurate*." (MaineHealth Br. 21 (emphasis added).) That concession is fatal. If the Vaccine Mandate does not prohibit granting religious accommodations to Plaintiffs, then Provider Defendants' undue hardship contentions fail. The sole basis for the undue hardship contentions below—upon which the district court dismissed Plaintiffs' Complaint—was that Provider Defendants would violate state law by offering to accommodate Plaintiffs' religious beliefs. (Add. 17–19.) Yet, seemingly, neither State Defendants nor Provider Defendants contend that there would be any violation of state law to have granted Plaintiffs a religious accommodation from the Vaccine Mandate.

That inconsistency demonstrates that adjudicating Provider Defendants' affirmative defenses was error. The inconsistency demonstrates that the district court

inappropriately made factual determinations against Plaintiffs concerning an affirmative defense. That is reversible error. *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001) (noting "it is . . . well settled that, for dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear on the face of the plaintiff's pleadings," and such pleadings "must leave no doubt that the plaintiff's action is barred." (cleaned up)). State Defendants concessions below, and now Provider Defendants' concessions on appeal, demonstrate adjudication of a disputed affirmative defense was erroneous. Plaintiffs plainly stated a plausible claim under Title VII, and the district court erred in dismissing their Complaint.

### C. Provider Defendants' Assertions Of Undue Hardship Required The District Court To Impermissibly Adjudicate Matters Outside Plaintiffs' Complaint.

#### 1. Plaintiffs' Complaint satisfied the plausibility prism necessary for a Title VII claim.

In a Title VII case, Plaintiffs need not "allege every fact necessary to win at trial." *Rodriguez-Vives v. P.R. Firefighters Corps*, 743 F.3d 278, 283 (1st Cir. 2014). Rather, under Title VII, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2014). "No single allegation need establish some necessary element of the cause of action, provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible." *Garayalde-Rijos v.*

*Municipality of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014) (cleaned up). Plaintiffs plainly crossed that threshold, and the district court's dismissal was in error.

To allege a *prima facie* case of religious discrimination, a plaintiff need only allege "(1) a *bona fide* religious practice conflicts with an employment requirement; (2) that he or she brought the practice to the employer's attention; and (3) that the religious practice was the basis for an adverse employment decision." *Sanchez-Rodriguez v. AT&T Mobility Puerto Rico, Inc.*, 673 F.3d 1, 8 (1st Cir. 2012) (cleaned up). When viewed through that plausibility prism, *Rodriguez-Reyes*, 711 F.3d at 54, the district court's dismissal error is illuminated. Plaintiffs' well-pleaded allegations establish that each of Provider Defendants is subject to Title VII's requirements (App. 322, ¶ 159), and no one disputes that they are. Plaintiffs' well-pleaded allegations establish that they have sincerely held religious beliefs that conflict with Provider Defendants' requirements to be vaccinated against COVID-19. (App. 298–304, ¶¶ 40–64; App. 322, ¶ 162–64.) And finally, Plaintiffs' well-pleaded allegations establish that Plaintiffs' religious beliefs were the basis for adverse employment action. (App. 305–309, ¶¶ 72–86, 323, ¶¶ 165–166.) Those allegations were plainly sufficient to establish a plausible Title VII claim, and that should have sufficed for Plaintiffs to engage in discovery to prove the merits of their claims. "[A] complaint that states a plausible claim for relief survives a motion to dismiss."

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plaintiffs' Complaint satisfies that demand.

> **2.    Provider Defendants' assertions of undue hardship require determinations outside of the allegations of Plaintiffs' Complaint.**

As demonstrated *supra*, there is significant dispute concerning whether State Defendants' Vaccine Mandate prohibited Provider Defendants from offering Plaintiffs reasonable accommodations for their religious objections, whether offering such accommodations would have violated state law, and whether Provider Defendants even believe that offering such accommodations would impose undue hardship on them. (Section II.B, *supra*.) Despite those significant questions and the fact that the district court's assertions conflict with the allegations of Plaintiffs' Complaint (*see* Opening Br. 51–52), Provider Defendants contend that the district court did not make any impermissible factual determinations in adjudicating their affirmative defenses. (Northern Light Br. 22; MaineHealth Br. 21–22.) And the district court ignored all of this by holding that "the facts establishing the requirements of the vaccine mandate and the consequences for employers who fail to abide by it are not in dispute." (Add. 20–21.) This is simply incorrect.

State Defendants have explicitly stated that their Mandate does not preclude religious accommodations, but Provider Defendants based their affirmative defenses solely on that very proposition. This conflict cannot support a holding that Plaintiffs'

Title VII claim is barred as a matter of law. A Rule 12(b)(6) motion to dismiss upon an affirmative defense cannot be granted unless it is clear from the face of the complaint that plaintiff's claims are "barred as a matter of law." *Sewell v. Bernardin*, 795 F.3d 337, 349 (2d Cir. 2015). Indeed, "[i]t is certainly true that motions to dismiss a plaintiff's complaint under Rule 12(b)(6) on the basis of an affirmative defense will generally face a difficult road." *Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015). Here, the district court made factual determinations as to whether there was a conflict in these statements (Add. 21) and resolved those factual questions against Plaintiffs (Add. 21–22). By venturing into disputed fact territory, "the district court tested the complaint in a crucible hotter than the plausibility standard demands." *Rodriguez-Reyes*, 711 F.3d at 53. Its decision must be reversed.

## CONCLUSION

Because the district court ignored the well-pleaded allegations of Plaintiffs' Complaint, resolved disputed factual questions against Plaintiffs, and adjudicated an affirmative defense based on clearly contested allegations, the court's decision exceeded its authority under Rule 12(b)(6). Plaintiffs' well-pleaded allegations plainly crossed the plausibility pleading threshold and entitled them to discovery on their claims. The district court must be reversed.

27

Respectfully submitted,

Dated: March 30, 2023

/s/ Daniel J. Schmid
Mathew D. Staver, *Counsel of Record*
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@LC.org
hmihet@LC.org
rgannam@LC.org
dschmid@LC.org
*Attorneys for Plaintiff-Appellant*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPE-FACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1.      This document complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7)(B). Not counting the items excluded from the length by Fed. R.

App. P. 32(f), this document contains 6,083 words.

2.      This document complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). This

document has been prepared using Microsoft Word in 14-point Times New Roman

font.


/s/ Daniel J. Schmid
Daniel J. Schmid
*Attorney for Plaintiff-Appellant*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing was filed via the Court's ECF filing system and therefore service will be effectuated by the Court's electronic notification system upon all counsel or parties of record.

/s/ Daniel J. Schmid
Daniel J. Schmid
*Attorney for Plaintiff-Appellant*